(174 App. Div. 473)

### SMITH et al. v. SMITH et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1916.)

1. Counties ⟨⟩151—Fiscal Management—Submission to Popular Vote of Question of Expenditure.

A submission to voters of a county of expenditure of $50,000 for a hospital was not invalid, as misleading, because the county had already acquired the site, or because the cost involved in maintenance, etc., would necessarily exceed the authorized initial outlay.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 166, 218; Dec. Dig. ⟨⟩151.]

2. Counties ⟨⟩105(1)—Use of Property—Hospital.

The erection and operation of a hospital is a proper county purpose, although the hospital takes some pay patients.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 165; Dec. Dig. ⟨⟩105(1).]

3. Counties ⟨⟩106—Use of Property—Hospital.

Nor is the operation of a hospital less of a county purpose because certain inmates may not be strictly confined.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 169; Dec. Dig. ⟨⟩106.]

4. Counties ⟨⟩151—Fiscal Management—Submission to Popular Vote of Question of Expenditure.

Referendum to voters of a county of the question of county expenditure for a tuberculosis hospital is not prohibited by the Constitution, as it is peculiarly a matter for local judgment, and the grant by Const. art. 3, §§ 26, 27, of certain powers, and permission to the Legislature to grant further powers, to county boards of supervisors does not imply that the people abdicate their sovereignty to such county board.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 166, 218; Dec. Dig. ⟨⟩151.]

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. CONSTITUTIONAL LAW ☜65—GOVERNMENTAL POWERS—DELEGATION.

    The state may refer a local matter to the voters of a locality who are specially interested.

    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 116; Dec. Dig. ☜65.]

Appeal from Special Term, Suffolk County.

Taxpayers' action, under General Municipal Law, § 51, by Martha T. Smith and others against Edward H. L. Smith and others to enjoin the erection of a tuberculosis hospital and to restrain the disposition of county bonds theretofore issued for the erection thereof. From a judgment for defendants, plaintiffs appeal. Affirmed.

    In 1909 the Legislature amended the County Law (Consol. Laws, c. 11) by providing (section 45) that a county board of supervisors by a majority vote might establish a county hospital for persons suffering from tuberculosis. Laws of 1909, c. 341, in effect May 13, 1909. Accordingly, on December 13, 1912, the Suffolk county board of supervisors voted to establish such a county hospital for tuberculosis. Thereafter it chose a site in the town of Brookhaven, subject to the approval of the state board of health. Following such approval by the state board of health, the board of county supervisors voted to take title to this site, consisting of about 10 acres of land, purchased for $4,566.60, and a conveyance was duly delivered and recorded in August, 1913. The County Law was amended in 1914 to provide that "the board of supervisors of any county that previous to January first, nineteen hundred and fourteen, has not voted to establish a hospital shall have authority to submit the question of establishing such a hospital to the voters of the county at any general election at which public officers are elected. The board of supervisors shall fix the sum of money deemed necessary for the establishment of said hospital." A statutory form for the proposition to be submitted to the voters followed. Laws of 1914, c. 323, § 1, in effect April 14, 1914. The board of supervisors having rescinded its previous resolutions to establish this tuberculosis hospital "excepting * * * the resolution to purchase a site therefor," on August 10, 1914, voted to submit to popular vote, at the coming November election, the proposition, "Shall the county of Suffolk appropriate the sum of fifty thousand ($50,000) dollars for the establishment of a tuberculosis hospital?" In the November, 1914, election, the vote was ayes 9,525, against 7,209 in the negative. On November 13th a building committee was appointed. On March 2, 1915, the board voted to issue bonds in the sum of $50,000, which were taken by the Equitable Trust Company of New York. Thereupon contracts were made for buildings and equipment, amounting to $34,000, on which the county treasurer had paid $23,000, and a board of managers for the hospital had been appointed by April 21, 1915—at the time this taxpayers' action started. The injunction pendente lite, however, which plaintiffs sought, was denied at the Special Term, from which order an appeal led to an affirmance without passing on the merits. 170 App. Div. 950, 155 N. Y. Supp. 1141. In January, 1916, the cause came on for trial, resulting in a dismissal, by judgment entered on April 8, 1916, from which this appeal is taken.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

P. L. Housel, of Riverhead, for appellants.

Samuel P. Hildreth, of Amityville, for respondents board of supervisors and county treasurer of Suffolk county.

W. E. S. Griswold, of New York City, for respondent Equitable Trust Co. of New York.

PUTNAM, J. [1] This submission, and the election that ensued, is attacked as a proposition not understood by the voters. The county had already been committed to the hospital by the acquisition of a site by the supervisors. Further, that the people were misled, since $50,000 did not adequately show them the whole cost involved, which, besides first erection, must include large continuous outlays for its operation and maintenance.

The rescission of the prior board resolutions left the hospital question open. The proposition to refer it to a county vote at the November election came under the express sanction of the statute of 1914, which formulated the words of the submission for ballot. While an adverse vote might leave the county burdened with these 10 acres, no longer to be used for a site, that embarrassment would be slight compared with the impolicy of a large hospital plant, with staff and operatives, ordered by a board, which action, too late, is found to be against public opinion of the county. The estimates of the hospital cost at that time were tentative. They were approximations, based on the unit cost per bed; but then the size of the building, with the beds to be accommodated, had not been determined. It was no part of this referendum to post the voters upon all the considerations implied in such a proposal, since, as matter of common experience, the first cost of such a charitable foundation bears no fixed relation to its future increase, with the gradual rise of expense for maintenance. It was because of these growing burdens as a county charge that it was prudent for the county officials, as well as following the plain legislative purpose, to submit this to popular vote before inaugurating this tuberculosis hospital.

[2] Appellants also rely on three constitutional objections: (1) That this tuberculosis hospital is not a proper county purpose, because its plan includes taking pay patients, either Suffolk county residents having the means to pay for private accommodation, or those from outside the county who otherwise would not be entitled to its benefits. But it has never been held that the incidental revenue from board, or for special care, deprives such an institution of its charitable character. Schloendorff v. New York Hospital, 211 N. Y. 125, 127, 105 N. E. 92, 52 L. R. A. (N. S.) 505, Ann. Cas. 1915C, 581; Little v. City of Newburyport, 210 Mass. 414, 96 N. E. 1032, Ann. Cas. 1912D, 425. We are referred to no decision which holds that a public institution is not a legitimate charity because in certain cases its facilities may be paid for, where that is but incidental to the free treatment of the majority of its patients.

[3] (2) Neither is it sound doctrine that such a county institution may be vitiated in its purpose because those under treatment are not kept in strict seclusion and confined within its gates, like the inmates of a hospital for contagious diseases or the violently insane in an asylum. This goes merely to the degree of protection which the patients or the public require. Such a narrow view of public health measures could not be upheld.

[4] (3) The Constitution nowhere prohibits the Legislature from enacting that such a referendum be submitted to the voters of a coun-

ty.  The powers of boards of supervisors of a county (Const. art. 3, § 26) are defined, and the Legislature allowed to grant them further powers (section 27).  Such constitutional grant of powers to the supervisors does not imply that the people abdicate their own sovereignty to such a county board.  To hold such a view would go against all our received doctrines of local self-government.

Under modern enlightened opinion as to the dangers of the scourge of tuberculosis, the state, by its County and Health Laws, has committed itself to a policy of segregation by means of properly equipped hospitals.  But different local conditions obtain in the various counties of the state.  Hence the people of the respective counties, having the direct interest in local conditions, can best judge whether they should establish local treatment for such patients, who, if suffered to remain in their homes, might infect their surroundings.  This record, containing the report of the special committee, shows many such institutions in other counties of the state.  Are we to pronounce the Health Law (Consol. Laws, c. 45), by which the state authorizes and directs such preservative measures for the community, as invalid because beyond local county powers?

[5]  The people, having by the Constitution granted general law-making power to the Legislature, were held to have thereby cut themselves off from acting under a state-wide submission (Barto v. Himrod, 8 N. Y. 483, 59 Am. Dec. 506); but the right to refer a local matter to the determination of the voters of a locality who are specially interested, is unquestioned (Bank of Rome v. Village of Rome, 18 N. Y. 38; Bank of Chanango v. Brown, 26 N. Y. 470, 472; Village of Gloversville v. Howell, 70 N. Y. 287; Stanton v. Essex County, 191 N. Y. 432, 84 N. E. 380).  Questions of issues of bonds for local objects are every day submitted to school and other local districts.  Laws of 1913, c. 351; 7 Birdseye Stat. p. 461.

"The right to refer any legislation of this character to the people peculiarly interested does not seem to be questioned, and the reference is by no means unusual."  Cooley Const. Lim. (7th Ed.) p. 177.

I advise to affirm the judgment of dismissal, with costs.  All concur.