**CITY OF CORSICANA v. BABB et al.**
**(No. 9381.)**

(Court of Civil Appeals of Texas. Dallas.
Nov. 1, 1924. Rehearing Denied
Nov. 15, 1924.)

**Municipal corporations ☞871—Employment of attorneys for defense of officers accused of murder and prosecution of murderers of officer held unauthorized.**

Municipal corporation's employment of attorneys for defense of officers accused of murder while making an arrest, and for prosecution of murderers of an officer, *held* unauthorized under Const. art. 3, § 52, prohibiting grant of public money in aid of an individual.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Suit by W. A. Babb and others against the City of Corsicana. Judgment for plaintiffs, and defendant appeals. Affirmed.

J. S. Callicutt and Richard Mays, both of Corsicana, for appellant.

Gibson & Lovett, of Corsicana, for appellees.

VAUGHAN, J. W. A. Babb and L. A. Pinkston, as plaintiffs below, filed this suit in the district court of Navarro county, Tex., on April 16, 1924, and presented their petition to the district judge and obtained a temporary writ of injunction against the city, restraining it from paying an attorney's fee contracted to be paid by it to J. S. Callicutt in the sum of $750, and from paying Richard Mays an attorney's fee of $500, for appearing in certain criminal litigation then pending in the district court of Navarro county, Tex.

In substance, the petition alleged that appellees were taxpayers in the city of Corsicana; that said city had unlawfully entered into a contract on or about March 29, 1924, with Richard Mays, an attorney at law at Corsicana, by which it undertook to pay him $500 to appear in the district court of Navarro county, Tex., and act as private prosecutor in certain cases pending in said court wherein Roger Q. Grace and Maude Grace, his wife, were charged with the murder of one Vessie Arp, said amount to be paid out of what was known as the "raw water fund"; and that said city had likewise unlawfully entered into a contract on or about the 11th day of March, 1924, with J. S. Callicutt, an attorney at law in Corsicana, by which it undertook to pay him $750 to appear in the district court of Navarro county, Tex., and assist the city attorney in the defense of three police officers of said city in as many cases charged with the killing of Jack C. Coker; that Vessie Arp, who was killed by Grace and wife, as well as Williams, Green, and Horton, charged with the killing of Jack C. Coker, were policemen and peace officers of the city, and that unless restrained said amounts would be paid to said Mays and to said Callicut in said respective amounts, and that the mayor and secretary of said city were threatening to sign and countersign, in their official capacities, warrants upon the city treasury in payment of said respective sums, and prayed for a temporary injunction against the mayor and secretary restraining them from so signing same; that said Mays and said Callicutt were private citizens of Corsicana, engaged in the private practice of their profession, and neither was a public official of said city; and that the city was without authority to employ either the said Mays or the said Callicutt for the aforesaid purposes.

On April 6, 1924, the district judge, in chambers and without a hearing, granted the temporary injunction as prayed for. The city answered said petition by way of general demurrer, general denial, and special answer, that the appellant admitted that it entered into a contract with Richard Mays and with J. S. Callicutt as alleged by appellee; that Vessie Arp, at the time of his death at the hands of Grace, and wife Maude Grace, was a police officer and was in the lawful discharge of his duty as such, and was attempting to lawfully arrest the said Grace and wife at the time they slew him; that Williams, Green, and Horton, at the time they were charged with having shot and killed Coker, were also police officers of the city, and were in the lawful discharge of their duty in undertaking to arrest said Coker; that in their own self-defense, brought about by the unlawful acts and conduct of Coker, it became necessary to fire upon him to protect themselves, and without any specific intent not otherwise justifiable to take his life; and that said police officers were in the lawful discharge of their duties in all they did of and concerning said Coker, and did not unlawfully kill him.

It was further specially alleged that for the proper enforcement of the laws of the city and the public welfare therein, it is necessary to maintain an effective and efficient police force; that said need had been intensified during the past year by reason of the fact that, resulting from the discovery of deep petroleum oil and a large production thereof, the city had become more or less the mecca of many lawbreakers, thugs, hijackers, and murderers; that the lives of officers in the discharge of their duty were oftentimes endangered, and, consequently, it was a matter of public concern and to the interest of the city government to defend and protect its officers in the lawful discharge of their duties; that for the reason aforesaid the city had lawfully employed

Richard Mays to assist the county attorney and city attorney in the prosecution of Grace and wife on the charge of murdering Arp, the grand jury having returned a bill of indictment against them therefor, and the grand jury having returned indictments against Williams, Green, and Horton for the alleged murder of Coker, the said city had the lawful right to employ J. S. Callicutt to assist the city attorney in their defense in the courts; that the respective amounts agreed to be paid to said Mays and said Callicutt were reasonable; and that the city of Corsicana, under its general as well as specific powers, was authorized to enter into said contracts and to provide for the protection of the lawful rights of said officers so engaged in the discharge of their lawful duties. And, further, that the commissioners of the city in employing said attorneys acted in good faith and in the exercise of sound discretion.

Upon the filing of said answer, the city filed a motion to dissolve the temporary injunction. By way of supplemental petition, appellees replied to said answer, alleging in effect that Vessie Arp, at the time he was killed, was not in the lawful discharge of his duties as an officer and was not lawfully undertaking to arrest either Grace or his wife; and that Williams, Horton, and Green did not act in their own self-defense in the killing of Coker, but that it was unjustifiable; and further denied that Corsicana had become the mecca of lawbreakers, thugs, hi-jackers, murderers, etc., but, on the contrary, that it was a law-abiding city and a peaceful, quiet community and practically free from lawlessness.

The motion to dissolve the temporary injunction came on for hearing before the district judge in chambers, which resulted in the judgment being rendered on June 20, 1924, overruling said motion, from which judgment this appeal was duly prosecuted.

The following facts we find were established on the hearing of said motion: The city of Corsicana is a municipal corporation, duly chartered and organized under the laws of Texas, and was and is operating under a charter adopted by the vote of the electorate of said city on December 11, 1917, by virtue of what is known as the "Home Rule Amendment." The city employs and maintains a police force and has a chief of police, and, as a municipal corporation, owns a waterworks which cost approximately $500,-000, which was paid for principally by two bond issues aggregating $450,000, which were voted by the property taxpayers of the city and are being paid by them; that the particular fund out of which Richard Mays was to be paid was derived from the sale of water from said waterworks to persons who reside outside of the city limits of Corsicana, to wit, oil companies, etc.; and that J. S. Callicutt was to be paid out of money de-

rived from the levy of taxes on the property of people residing in the city of Corsicana; that said Mays and said Callicutt had no connection with the city government as officers or agents; that Fred Upchurch is the lawfully elected city attorney of the city and that Ballard W. George is the duly elected and acting county attorney for Navarro county.

That on the 23d day of January, 1924, Vessie Arp, who was a policeman in the city of Corsicana, was killed while undertaking to make an arrest, and the grand jury of Navarro county, Tex., thereafter returned a bill of indictment against Roger Q. Grace and Maude Grace, charging them with the offense of murder of said Arp.

Spurgeon Williams and Jim Green were policemen of said city, and one Earl Horton was employed by the St. Louis & Southwestern Railway Company as an officer; that on the 6th day of March, 1924, while said officers were undertaking to make an arrest for alleged violation of law in the city of Corsicana by one Jack Coker, said Coker was shot and killed. On the 13th of March, 1924, the grand jury of Navarro county returned a bill of indictment charging said Policemen Williams and Green with the offense of murder of Jack Coker in the same indictment.

That on the 29th day of March, 1924, the city commission of appellant passed and adopted a resolution in substance that the commission employ Richard Mays to assist in the prosecution of the two Graces for the murder of said Arp, and agreed to pay the said Mays the sum of $500 as above stated. That none of said money has at this time been paid, but same will be paid by appellant unless restrained; that on the ———— day of ————, 1924, said city commission regularly passed and adopted a resolution appropriating the sum of $750 to be paid out of the general fund, as above stated, to J. S. Callicutt, for the purpose of defending Williams, Green, and Horton, who were later indicted for the alleged murder of Coker. At the time this appropriation was made said parties were then charged by complaint with the offense of murder of said Coker and were thereafter indicted by the grand jury of Navarro county. That the sum of $375 of the above amount has been paid to J. S. Callicutt, and the balance will be paid unless the appellant is restrained from so doing. That on April 6, 1924, appellees, who were then, and on the date of the hearing of said motion were, resident property owners and taxpayers of the city of Corsicana, brought this suit to enjoin appellant from paying out any further funds of the city to Richard Mays and J. S. Callicutt, or either of them.

From the agreement of the parties made a part of the statement of facts, we find that there is no language in the charter of the

city of Corsicana or its ordinances that could be construed, either expressly or impliedly, as prohibiting the city of Corsicana from employing Callicutt and Mays as attorneys to appear in the above criminal prosecutions; or that could be either expressly or impliedly construed as granting said commission the power to employ said attorneys, said charter and ordinances being silent upon that question.

It is the contention of appellant that the granting of the writ of injunction in the first instance was erroneous, and that its motion to dissolve should have been sustained as to that feature of the case based upon the employment of Hon. Richard Mays, on the ground that Vessie Arp, who was killed by Grace and wife, was a policeman in the service of appellant in the discharge of his official duty as such police officer in a matter in which the corporation had an interest, the said Arp being, at the time he was killed, in the discharge of a duty imposed or authorized by law, in good faith; that therefore, as the act in which the officer was engaged at the time of his death related directly to a matter in which the city had an interest, the city had a right to employ counsel to prosecute Grace and wife and to appropriate funds to pay reasonable compensation for the services to be rendered by said Mays under said employment.

And, as to that feature of the case based upon the employment of Hon. J. S. Callicutt, on the ground that Williams and Green were policemen of said city at the time they are charged with having shot and killed Coker, that they were acting in good faith in the lawful discharge of their duty as such police officers in undertaking to arrest him, and in their own self-defense, brought about by the unlawful acts and conduct of Coker, it became necessary to fire upon him to protect themselves; that the act in which said officers were engaged at the time of the shooting of said Coker related directly to a matter in which the city had an interest, to wit, the arrest of a violater of a criminal ordinance. Therefore the city, acting through its commission, had the right to employ counsel to defend said police officers and to appropriate public funds of said city to pay reasonable compensation for the services to be rendered by said Callicutt under said employment.

On the other hand, appellees contend: (1) That the obligation on the part of appellant city to pay Hon. Richard Mays and Hon. J. S. Callicutt any sum of money, even as shown by the pleadings of appellant, the former to prosecute the Graces and the latter to defend said police officers, violated the Constitution of the state of Texas; and (2) that the resolutions of the city commission employing said attorneys were ultra vires, for the reason that a municipal corporation

cannot make any character of contract that is not expressly authorized by its fundamental laws (its charter), or that from its charter it can be fairly implied that it was the purpose of the Legislature to grant the right to make as being necessarily implied in order to give effect to a power expressly conferred.

At the very threshold of its contention, appellant city is met with the following constitutional prohibition:

Article 3, § 52. "The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

Had the Legislature incorporated, as a part of the charter powers of the city of Corsicana, a provision authorizing said municipality to grant public money in aid of or to any individual, same would have been void under the above constitutional provision, and no power to so contract could have been lawfully exercised by appellant city by virtue of such provision being contained in its charter.

The above constitutional provision was adopted by the electorate of this state for the purpose of safeguarding the expenditure of public funds largely represented by the levy of a tax upon the property value of its citizens, to the end that money thus extracted from the people should only be used for the public good and not for private gain or benefit.

In what respect would the payment of the respective sums of money contracted to be paid by appellant be for a city purpose or the benefit of the public; that is, for the common good and general welfare of the people of the municipality? A tax levy for the purpose of raising funds to be used in defraying the expense incurred by an officer in defending a criminal prosecution against him has never been authorized by the electorate of this state, and, if same had been, it would be but a legislative monstrosity. It would be rather an anomalous condition to have a tax levy made throughout the entire state for the purpose of providing means for the prosecution of crime, and then for the same lawmaking power to authorize the levy of a tax in a political subdivision of the state for the purpose of aiding a party charged with crime to make his defense. We fail to see wherein the public would be any more interested in an officer being furnished with financial aid to meet expense so incurred than it would be in defraying the expense incurred by any other citizen answering to a criminal charge. However, even a necessity does not exist for such expenditure of public funds, as the law pro-

vides for the appointment of counsel by the court trying the case of one charged with a capital offense and not financially able to employ counsel of his own selection.

As to the prosecution of the parties charged with the murder of Arp, the state has provided sufficient and comprehensive court proceedings applicable to all parties alike, including the services of a prosecuting attorney selected by the people, charged with the duty of prosecuting in their respective counties or districts before the courts thereof, all parties charged with the commission of an offense against the criminal laws of the state. The office of the above constitutional provision is undoubtedly to prevent the use of public funds by a municipality for purpose of private interests, aid, or benefit, as was, although in perfect good faith, attempted in the instant case. The payment of the respective sums of money for which the city commission attempted to make the above appropriations would be, at best, but a gratuity, as no benefit thereby could be conferred upon the city, and there was never a legal or moral obligation on the part of the city to contract for the employment of an attorney to prosecute the parties charged with the murder of police officer Arp, or, on the other hand, to employ an attorney to defend police officers charged with the murder of Coker. Certainly it is not the duty of the public, represented by a municipality, to defend or aid in the defense of a police officer charged with the violation of any provision of the state penal code, especially that of murder. The greatest restraining influence holding the average peace officer in check in the exercise of the authority of his office is the fact that he, as such officer, is amenable to the law for abuse of the powers conferred, and that, on being hailed before the courts to answer for his stewardship, the expense incurred on his part must be borne by himself, and to sustain appellant's contention would be but to destroy this safeguard, creating a condition short of despotism. In accepting the office held by them, Williams and Green, respectively, each assumed the risk of defending himself at his own expense against any criminal accusation brought against him, even though unfounded. In other jurisdictions it apparently has been held that the expense of a person indicted for a criminal offense in connection with his official duties can be made a public charge by way of indemnifying him against the expense thereof. Appellant has cited in its brief cases in support of such a holding. However, the principle being so at variance with what we understand to be a proper conception of the protection of public interests against invasion for private gain or individual benefit, we are unwilling to become committed thereto. The defense of the police officers charged with the murder of Coker is

for their own respective benefits, not for the benefit of the city of Corsicana, and certainly the payment of compensation to an attorney to represent them is not for the common good and general welfare of the municipality nor public in character. And as to the payment of the fee for the prosecution of the parties charged with the murder of Arp, it is sufficient to say that the purpose is not necessarily for the common good and general welfare of the people of the municipality; the state having made ample provision for the prosecution of the parties charged with the offense—a duty resting with the state and not with the municipality or in any respect imposed upon the city as a part of its service to the public represented by it.

The following authorities were consulted in reaching the conclusion herein stated: Chapman v. New York, 168 N. Y. 80, 61 N. E. 108, 56 L. R. A. 846, 85 Am. St. Rep. 661; Worley v. Inhabitants of the Town of Columbia, 88 Mo. 106; Dillon on Municipal Corporations (5th Ed.) vol. 1, p. 563, § 307; Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69; Butler v. Milwaukee, 15 Wis. 546 (493); Hight v. Monroe County, 68 Ind. 575.

We hold that the respective contracts of employment were beyond the powers granted, not only in the organic law of the municipality, to wit, its charter, but, if such powers had been granted, same would have been inoperative and void, being in contravention of the above constitutional provision. It is therefore ordered that the judgment of the lower court be in all things affirmed.

Affirmed.