**SEYDLER, Judge, et al. v. BORDER et al.**

**No. 10771.**

Court of Civil Appeals of Texas. Galveston.

March 17, 1938.

Rehearing Denied April 21, 1938.

Donald M. Duson, of El Campo, and Thos. H. Abell, of Wharton, for appellants.

Isaac Garrett and M. S. Munson, Jr., both of Wharton, for appellees.

GRAVES, Justice.

This appeal is from an order of the district court of Wharton county—entered at the behest of the appellees, private citizens of the county, duly qualified to apply therefor—temporarily enjoining the appellants, who constituted the commissioners' court or governing body of that county, from issuing, selling, or doing anything else toward the validation of $85,000 of proposed bonds of the county "for the purpose of erecting, constructing, and equipping a County Hospital and purchasing a site therefor, in El Campo, Wharton County, Texas, as authorized, by chapter 2, title 22 [article 718 et seq.], Revised Statutes, 1925, and article 4478, Revised Statutes 1925," pursuant to an election to authorize them, which had already been held and carried; the order also prohibited the levying of any taxes to pay for the bonds, as well as the doing of any other act looking toward the further prosecution of the enterprise the bond election had so authorized.

The sole basis for the action taken below is thus recited in the judgment: " * * * the Court having heard the pleadings, evidence, and argument of counsel, is of opinion that R.S.1925, art. 4478 is unconstitutional and void, as alleged in plaintiffs'

First Amended Original Petition, and as particularly pointed out in paragraph 4 thereof, and that such election and all bonds, contracts, and other acts done or contemplated to be done by defendants under the authority of such R.S.1925, art. 4478 are void."

The ground of invalidity, as stated in paragraph 4 of the petition, the judgment so cites, is, in effect, simply that R.S. art. 4478 "is in violation of article 3, section 52, of the Constitution of Texas."

So that, the only question presented here is whether or not the learned trial court erred in its quoted holding. This court is constrained to hold that it did, being unable to clearly see that the otherwise existing plenary power of the Legislature to authorize the counties to provide in such a way for the care and treatment of the sick, within the exercise of their governmental jurisdiction, is prohibited by the invoked section 52 of article 3 of the Constitution, either expressly or by necessary implication from its terms; that being, by all the applicable authorities, the approved test of the matter. 8 Texas Digest, Constitutional Law, ⊕26 and 48; State v. Brownson, 94 Tex. 436, 61 S.W. 114.

Article 4478, a state-wide general law, essaying to give counties in their governmental capacity that power, was passed in 1913 as a public-health measure, and throughout the intervening quarter of a century has been both retained and maintained as such, without its validity having been heretofore challenged in the appellate courts; such legislative and executive construction of it for so long a period, as well as the exercise of the assumed authority it apparently gave them by numerous counties throughout the state, under well-settled authority, created such a presumption in favor of the existence of such power as is itself entitled to great weight in the courts. Galveston H. & S. A. R. Co. v. State, 77 Tex. 367, 12 S.W. 988, 13 S.W. 619; Collingsworth County v. Allred, 120 Tex. 473, 40 S.W.2d 13, paragraph 11, at page 16.

Not only so, but having been initiated, maintained, and declared as a governmental policy, the authorization of bonds for the construction and maintenance of hospitals by county units for the care of the sick, as therein contained, necessarily constituted it a public purpose, as contradistinguished from a private one "in

aid of, or to any individual, association, or corporation whatsoever"; in fact, it has been held by the courts in a number of the other states that such construction and maintenance of hospitals constitutes a public purpose. State v. Walton County, 97 Fla. 59, 119 So. 865; Combs v. Center, 234 Ky. 364, 28 S.W.2d 37; Smith v. Smith, 174 App.Div. 473, 160 N.Y.S. 574; Cook v. City of Fall River, 239 Mass. 95, 131 N. E. 345.

The interpretation put upon section 52, article 3, by the learned trial court, as well as by the appellees in this court, seems to have been that it expressly prohibited the Legislature from authorizing counties to issue bonds for any other purposes than those specifically enumerated either in that section itself or in some other provision or section of the Constitution, and to have been based upon the holding of the Supreme Court in Collingsworth County v. Allred, 120 Tex. 473, 40 S.W.2d 13.

That cause, as well as its underlying factual basis, seems to this court to be clearly distinguishable from the cause at bar, in this: The controlling, if not the sole, thing necessary for a decision in the Collingsworth Case was whether or not the power expressly conferred on counties to issue bonds for the construction of courthouses—under pre-existing article 11, section 2, of the Constitution—had been repealed by the subsequently amended article here involved, that is, section 52 of article 3; the holding being that it had not been so repealed, but that, on the contrary, section 2 of article 11 had remained in full force and unimpaired by the adoption of such amendment; furthermore, the issuance of bonds for the construction of courthouses had been, as recited, expressly authorized by the Constitution itself in section 2 of article 11, whereas in this instance the reverse of that situation constitutes the sole ground for the striking down of this statute, that is, that its subject matter, not being expressly and specifically authorized by the terms of any constitutional provision, yet was expressly *prohibited* by the terms of section 52 of article 3, or by imperative inference therefrom.

■ To the contrary of this view, this court, as indicated, has been unable to find any authority therefor, and appellees have not cited any, when applied to such facts as here exist; in other words, both before and since the amendment in 1904 of this section 52, our courts seem to have uniformly construed it as placing a restriction upon the power of the Legislature to authorize counties and cities to gratuitously grant public money, or so lend their credit, to or in aid of any individual or private commercial-enterprise, but not as interdicting them from raising money by bond-issues for such a public and humanitarian purpose as relieving the sick, by the operation themselves of such hospitals as the one herein contemplated. For instance, in Byrd v. City of Dallas, 118 Tex. 28, 6 S.W. 2d 738, 739, 740, where statutes authorizing certain cities to pay their policemen and firemen pensions were under attack, as being in contravention of this same section 52 of article 3 of the Constitution, the Supreme Court, in upholding them, said: "That portion of title 109 of the Revised Statutes referred to in the certificate is not in any wise obnoxious to the provision of the Constitution cited. Without discussing in detail these provisions of the Constitution, it is sufficient to say each of them is intended to prevent the application of public funds to private purposes; in other words, to prevent gratuitous grant of such funds to any individual, corporation, or purpose whatsoever. This limitation upon the power of the Legislature is a wholesome one and is plainly stated in unequivocal terms. It is academic to say the Legislature has power to pass any law which its wisdom suggests that is not forbidden by some provisions of the Constitution (federal or state). If the pension provided for in this act is a gratuity or donation to the beneficiary, it is clearly forbidden by the fundamental law. On the other hand, if it is a part of the compensation of such employee for services rendered to the city, or if it be for a public purpose, then clearly it is a valid exercise of the legislative power."

Other authorities along the same line are these: Texas Employers' Ins. Ass'n v. City of Tyler, Tex.Com.App., 288 S.W. 409; Bland v. City of Taylor, Tex.Civ. App., 37 S.W.2d 291; Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033; Sturgeon v. City of Paris, 58 Tex.Civ.App. 102, 122 S.W. 967; City of Corsicana v. Babb, Tex.Civ.App., 266 S.W. 196; Id., Tex.Com.App., 290 S.W. 736; Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S.W. 553.

Neither has any other section of the Constitution been pointed out which **may**

reasonably be construed as expressly, or by necessary implication, prohibiting the Legislature from thus authorizing the issuance of bonds for county hospitals, in the furtherance of a public purpose; indeed, the implications from some of them, such as article 8, § 9, article 11, § 2, seem to trend the other way.

■ Under this last-cited section 2 of article 11, and the construction our appellate courts have uniformly put upon it, the Legislature is expressly directed to provide for the establishment of "County Poor · Houses and Farms" in order that counties availing themselves of such privilege might properly care for the indigent and poor among their citizens; whereas, as affects county hospitals for the care and treatment of the sick, while there has been no such express direction to the lawmaking body to provide for them, it seems to this court that, by nowhere prohibiting them, the Constitution left the power in the Legislature to so establish them. See Robertson v. Breedlove, 61 Tex. 316.

While the subject is an interesting one, further discussion is foreborne, since these conclusions determine the merits of the appeal; they require that the challenged order be reversed, and the temporary injunction dissolved; it will be so ordered.

Trial court's judgment reversed, and its temporary injunction dissolved.

PLEASANTS, C. J., absent.

On Motion for Rehearing.

GRAVES, Justice.

■ This court is indebted to the able counsel for the appellees for an argument in support of their motion for rehearing. herein that moves its members to recall the perplexed response of King Agrippa to the apostle Paul: "Almost thou persuadest me to be a Christian." But, at the same time, it must also recall this declaration from our Supreme Court in Vincent v. State, Tex.Com.App., 235 S.W. 1084, 1088: "It is a well-established rule that the court will always lean in favor of the validity of a legislative act; that, if there be a reasonable doubt as to the constitutionality of a statute, the court will solve the doubt in favor of the statute; that, where the Legislature has been left a discretion, the court will assume that the discretion has been wisely exercised; that where the con-

struction of a statute is doubtful it will adopt such construction as will harmonize with the Constitution, and enable it to take effect.'"

The gist of that argument is thus quoted in hæc verba: "It is the contention of appellees that Section 52, which includes the original section and the 1904 amendment, must be construed as a whole, and that as a whole, the express language, the evident and obvious intention, of that section is to prohibit the Legislature from authorizing counties to issue bonds for any purpose other than those purposes enumerated in that section or elsewhere provided for in the Constitution, whatever that purpose may be, private or public."

It is followed by quotations from these authorities as vindicating its soundness: Simmons v. Lightfoot, 105 Tex. 212, 146 S.W. 871; Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S. W. 553; Bexar County v. Linden, 110 Tex. 339, 220 S.W. 761; Garrett v. Commissioners' Court, Tex.Civ.App., 230 S.W. 1010, 1011, reversed, Tex.Com.App., 236 S.W. 970; State v. Bank of Mineral Wells, Tex.Civ.App., 251 S.W. 1107.

Each and all of these relied-upon opinions dealt with controlling states of fact, hence with applications of amended section 52 of article 3, which are thought to be distinguishable from the one existing here; indeed, the expressions of our Supreme Court in only one of them—Bexar County v. Linden, supra—seem to lend support to the general construction the appellees so contend for, and that, as appears to this court, is only seeming. The court was there dealing with a statute requiring district attorneys to pay into the county treasury the excess fees of their offices, and, while its review of the constitutional provisions deemed to bear upon the matter, inclusive of amended section 52 of article 3, contained expressions apparently in support of the appellees, the statute was upheld, upon the conclusion that such disposition of the fees was in no sense a grant of public money as a gratuity to the county, but, on the other hand, its effect was but to apply such funds to the uses of the State as a government, acting through the county as one of its agencies or units.

That holding, therefore, rather than in reality lending comfort to the appellees in their view, furnishes support for the contrary one thus expressed in the original

opinion herein: "Both before and since the amendment in 1904 of this section 52, our courts seem to have uniformly construed it as placing a restriction upon the power of the Legislature to authorize counties and cities to gratuitously grant public money, or so lend their credit, to or in aid of any individual or private commercial-enterprise, but not as interdicting them from raising money by bond-issues for such a public and humanitarian purpose as relieving the sick, by the operation themselves of such hospitals as the one herein contemplated."

So, applying the principle of the Linden Case here, there was no authorization by this statute to the giving away of the public money, nor to its application to other than strictly governmental purposes and uses, but only a permission to the counties as state agencies to raise money, pursuant to a favorable vote of the people, as a method of safeguarding, under its own auspices, the public health as one of the vital interests of its people.

The motion for rehearing will be overruled.

Overruled.

PLEASANTS, C. J., absent.