PTACEK v. HOFHEINZ, County Judge,
et al.

No. 10904.

Court of Civil Appeals of Texas. Galveston.
May 11, 1939.

Rehearing Denied June 1, 1939.

Bracewell & Spiner, of Houston, for appellant.

A. T. Carleton and Marshall T. Anderson, both of Houston, for appellees.

GRAVES, Justice.

This statement, accepted by the appellees, is taken from the appellant's brief:

"Appellee, D. B. Gillespie, and others, residing in what is known as the Ledger Addition to the Town of Baytown, filed their application with the County Judge of Harris County, praying that certain designated territory referred to in the application be made a fresh-water-supply district. They prayed for an election for such purpose. The petition showed on its face that the area sought to be so incorporated was adjacent to the unincorporated town of Baytown, and that it contained 135 acres; it further showed on its face to be 'for the purpose of conserving, transporting, and distributing fresh water from lakes, pools, reservoirs, wells, springs, creeks and rivers for domestic and commercial purposes as provided under Title 128, Chapter 4, of the Revised Civil Statutes of the State of Texas. That it is contemplated by the signers hereof to create such a district to be known as the Tri-City Fresh Water Supply District No. 2 of Harris County, and to have installed within the boundaries of such district a fresh water system to consist of the necessary well or wells, pumping stations, water lines, sanitary sewer lines, disposal plants, fire hydrants and all necessary connections thereto, in order to establish a complete system to furnish to the residents in said district a supply of fresh water for domestic and commercial purposes as contemplated by Article 7881 of the Revised Civil Statutes.'

"The petition further recited that said inhabitants were without fire protection and sanitary sewerage, and did not have an adequate supply of water for domestic use.

"This application came on to be heard before the Commissioners' Court and the appellant, Ptacek, and others, appeared and contested the same. It was contended before the Commissioners' Court that the area sought to be incorporated did not have any

natural resources to conserve, within the terms and meaning of the Constitutional provision, and that all of the things hoped to be accomplished by the incorporation of the fresh water supply district was a matter peculiarly within the powers and functions of a city government, and that the Commissioners' Court should deny the petition for that reason. Testimony was presented to the Commissioners' Court touching the purposes of the incorporation of such district, and all of the proponents of such incorporation of the fresh water supply district, who testified, stated that the purpose of the incorporation was to avail themselves of sanitary sewerage, fire protection, and a more adequate supply of water for domestic use; the area sought to be incorporated was only 135 acres, and there were no creeks, springs, wells, or reservoirs of any kind located on the 135 acres, save and except the one well owned by the appellant, Cyril Ptacek, from which he was supplying the residents of such district with water for domestic purposes. Ptacek was shown to be a property taxpaying voter in the district. There was no dispute as to the purposes and designs of the inhabitants in incorporating the district. The Commissioners' Court in all things overruled the protest of the appellant and others, and ordered the election held.

"Thereafter, and before the election was held, the appellant, Ptacek, filed his suit in the district court to review and cancel the order, so made by the Commissioners' Court in calling the election, setting up substantially the facts related. No hearing was had until after the election, at which the majority of the voters of the district voted to incorporate the same as a fresh water supply district. Thereafter, the so-called fresh water supply. district obtained leave and intervened in the suit and the Commissioners elected at such election also intervened. The cause was tried before Judge Atkinson of the 11th District Court upon an agreed statement of the facts, a jury having been waived, and appellant was denied the relief prayed for, the effect of such order being to establish the existence of the Tri-City Fresh Water Supply District as a valid, subsisting corporation, incorporated for such purposes."

The main litigants were the appellant, on the one hand, in his capacity as a tax-paying private citizen of the 135-acre area affected, and the Tri-City District No. 2, as so incorporated, on the other; in ultimate effect, appellant simply challenged the right of the district to exist at all under the Texas Constitution, insisting that its incorporation was impliedly prohibited by Article 11, sections 1 to 10, inclusive, of the Constitution, Vernon's Ann.St. providing for municipal corporations and outlining their powers, as well as being in contravention of Article 16, section 59a, allegedly having to do with the conservation of flood waters, irrigation, reclamation, and drainage, and not to the obtaining of municipal facilities such as the district sought; further, that R.S.Article 7881 et seq., if construed to impliedly authorize the creation of such districts as the appellee, were to that extent beyond the scope of such Article 16, section 59a, of the Constitution, and void.

The appellee, upon the other hand, grounded its right to exist upon such Article 16, section 59a, of our Constitution, and specifically upon R.S.Article 7881 et seq., as the enabling-acts carrying out the general policy declared in that article of the Constitution.

■ Appellant frankly concedes that he made no question as to the sufficiency of the appellee's petition for the district, as prescribed in R.S.Article 7882, nor as to any other procedural steps taken by it pursuant to that and succeeding articles of the statutes, but planted himself upon his stated position that the area involved did not have any natural resources to conserve, within the terms and meaning of Article 16, section 59a, of the Constitution, and that the objectives of the appellee under its sought-for incorporation constituted matters peculiarly and exclusively within the powers of a municipal government that could only be created pursuant to Article 11, sections 1 to 10, inclusive, of the Constitution.

This court agrees with the learned trial court in having overruled these presentments of the appellant, and in having held that the appellee had been duly and legally created under Article 16, section 59a, of the Constitution of Texas, and under Chapter 4, Title 128, of the Revised Civil Statutes of the State, Vernon's Ann.Civ.St. art. 7881 et seq.

It seems to it that the appellant has viewed the statutory and constitutional provisions thus brought into review darkly through the dimming glasses of his own individual position as owning the only present producing water-well in that area, from which he now enjoys to his profit in selling it to all other residents, a monopoly of the water-supply now available; that, if he had

contemplated the other features of the evidence before the Commissioners' Court, he would have realized that there was a natural resource in that area susceptible of being reclaimed and utilized by the appellee, in the existence of an ample supply of subterranean water for its purposes; indeed, this stipulation to that effect appears in the agreed statement of facts:

"And it is further agreed that a supply of fresh water sufficient for the purposes above set forth, can be obtained within the boundaries of such district from various stratas of the percolating water by the drilling of wells, such subterranean water gradually working its way from water sheds many miles distance and in seeking its level finally empties into the Gulf or its arms."

Neither is this court able to see eye-to-eye with appellant as to any irreconcilable conflict between the several policies of the Constitution, as featured in respective Articles 11, sections 1 to 10, providing for the creation of municipal corporations like cities, counties, and towns, and enumerating their powers, and Article 16, section 59a, relating to the conservation and development of all the natural resources of the State; they appear to be simply parallel declarations of decidedly different policies, and there is nothing in the one to impinge or overlap upon the express purpose of the other; neither is it further thought there is any doubt about R.S.Article 7881 being a responsive enabling-act to Article 16, section 59a, and as such properly authorizing the creation of the appellee, for the purposes declared upon by it in its application to the Commissioners' Court.

Appellant's further objections that this area could not be validly erected into such district because it lay contiguous to the municipality of Baytown, which consequently should be held, under Article 11, sections 1 to 10, supra, to have possessed the exclusive power to provide the facilities it contemplated, is equally inept; that theory, that there could not be two such suns in the heavens, appears to have thus been expressly dissipated by the Legislature itself in enacting Article 7881 as follows, its concluding sentence being here italicized:

"Art. 7881. *Purposes.*—There may be created within this State conservation districts to be known as Fresh Water Supply Districts for the purpose of conserving, transporting and distributing fresh water from lakes, pools, reservoirs, wells, springs, creeks, and rivers for domestic and commercial purposes, as contemplated by Section 59, Article 16 of the State Constitution. Said districts shall have and may exercise all the rights, privileges and powers given by this chapter and in accordance with its directions, limitations and provisions. *Such districts may or may not include cities and towns.*"

There being no prohibition anywhere in any of the articles of the Constitution invoked by the appellant in his own behalf, either express or by necessary implication, the plenary power of the Legislature to enact this Article 7881 in that way remains clear. Seydler. v. Border, Tex.Civ.App., 115 S.W.2d 702.

These conclusions require an affirmance of the judgment appealed from; it will be so ordered.

Affirmed.