# THE ATTORNEY GENERAL
## OF TEXAS
Grover Sellers                        AUSTIN 11, TEXAS
JOHN XXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL


Hon. John R. Shook                    Opinion No. O-6962
Criminal District Attorney            Re: Legality of proposed
Bexar County                          issuance of time warrants
San Antonio, Texas                    from the Permanent Improve-
                                      ment Fund in payment for
Attention Mr. S. Benton Davies        new construction and improve-
                                      ment of certain existing fa-
                                      cilities at the Robert B.
Dear Sir:                             Green Hospital.

        We acknowledge receipt of your opinion request of
recent date and quote from your letter as follows:

        "We are enclosing herein a copy of a letter
    submitted to us by Hon. Charles W. Anderson, County
    Judge of Bexar County, Texas, on the 26th day of
    November of this year, which letter carried with it
    a copy of a contract between the Bexar County Commis-
    sioners' Court and Dewar, Robertson & Pancoast, et al,
    bond houses, of date November 7, A.D., 1945.

        "We call your attention particularly to that
    part of the County Judge's letter which reads as
    follows:

        "'The Commissioners' Court on today passed an
    order authorizing and instructing me to request the
    Criminal District Attorney of Bexar County to ask
    the Attorney General of Texas for an opinion as to
    the legality and validity of said Permanent Improve-
    ment Fund Time Warrants proposed to be issued by
    Bexar County, the proceeds of which are to be used
    in payment for such new construction and improve-
    ment of certain existing facilities at said Robert
    B. Green Hospital as well as for the purchase of
    certain new equipment at said institution.'

        "In accordance with this request above quoted
    and for the reason that when the Refunding Bonds are
    issued to take up the Time Warrants proposed to be
    issued it will become the duty of the Attorney Gen-
    eral to approve such issues, we are forwarding these
    communications to you with the request that you

render us an opinion answering the questions propounded in Judge Anderson's letter.

"In addition to the matter referred to in Judge Anderson's letter, we desire to ask the following questions:

"I.  Can the Commissioners Court legally enter into a contract with the bonding companies prior to the time any contract has been let for the improvements contemplated and prior to the time Time Warrants are issued in liquidation of the indebtedness of the County for the performance of the contract for improvements; and, can the County at this time and prior to the issuance of said warrants bind itself to refund the Time Warrants into bonds?

"II.  Does the contract here in question create any liability on the part of the County to the bonding companies?

"Your usual prompt attention to matters submitted to you will be greatly appreciated."

In 1913, the Legislature of Texas authorized the establishment of county hospitals and provided for the election for bond issues and the issuance of bonds for the cost of the erection of same and provided revenues for maintaining and managing said hospitals.

This Act has been brought forward in Vernon's Annotated Civil Statutes as Articles 4478-4493.

Article 4478, reads as follows:

"The commissioners court of any county shall have power to establish a county hospital and to enlarge any existing hospitals for the care and treatment of persons suffering from any illness, disease or injury, subject to the provisions of this chapter.  At intervals of not less than twelve months, ten per cent of the qualified property tax paying voters of a county may petition such court to provide for the establishing or enlarging of a county hospital, in which event said court within the time designated in such petition shall submit to such voters at a special or regular election the

proposition of issuing bonds in such aggregate amount as may be designated in said petition for the establishing or enlarging of such hospital. Whenever any such proposition shall receive a majority of the votes of the qualified property tax payers voting at such election, said commissioners court shall establish and maintain such hospital and shall have the following powers:

"1. To purchase and lease real property therefor, or acquire such real property, and easements therein, by condemnation proceedings.

"2. To purchase or erect all necessary buildings, make all necessary improvements and repairs and alter any existing buildings, for the use of said hospital. The plans for such erection, alteration, or repair shall first be approved by the State Health Officer, if his approval is requested by the said commissioners court.

"3. To cause to be assessed, levied and collected, such taxes upon the real and personal property owned in the county as it shall deem necessary to provide the funds for the maintenance thereof, and for all other necessary expenditures therefor.

"4. To issue county bonds to provide funds for the establishing, enlarging and equipping of said hospital, and for all other necessary permanent improvements in connection therewith; to do all other things that may be required by law in order to render said bonds valid.

"5. To appoint a board of managers for said hospital.

"6. To accept and hold in trust for the county, any grant or devise of land, or any gift or bequest of money or other personal property or any donation to be applied, principal or income or both, for the benefit of said hospital, and apply the same in accordance with the terms of the gift."

Article 4493 reads as follows:

"Where no county hospital is now provided for the purpose aforesaid, or where such provision is inadequate, the commissioners court of each county which may have a city with a population of more than ten thousand persons, within six months from the time when such city shall have attained such population, such population to be ascertained by such court in such manner as may be determined upon resolution thereof, shall provide for the erection of such county hospital or hospitals as may be necessary for that purpose, and provide therein a room or rooms, or ward or wards for the care of confinement cases, and a room or rooms or ward or wards for the temporary care of persons suffering from mental or nervous disease, and also make provision in separate buildings for patients suffering from tuberculosis and other communicable diseases, and from time to time add thereto accommodations sufficient to take care of the patients of the county. This time may be extended by the State Board of Health for good cause shown. Unless adequate funds for the building of said hospital can be derived from current funds of the county available for such purpose, issuance of county warrants and script, the commissioners court shall submit, either at a special election called for the purpose, or at a regular election, the proposition of the issuance of county bonds for the purpose of building such hospital. If the proposition shall fail to receive a majority vote at such election said court may be required thereafter at intervals of not less than twelve months, upon petition of ten per cent of the qualified voters of said county, to submit said proposition until same shall receive the requisite vote authorizing the issuance of the bonds."

In the case of Seydler, et al. v. Border, et al., 115 S.W.(2d) 702, the Galveston Court of Civil Appeals held that Article 4478 was constitutional and that same authorized counties to issue bonds for the construction and equipment of county hospitals. The court also held that the authorization of bonds for the construction and maintenance of hospitals by county units for care of the sick constituted a "public purpose" as distinguished from a "private purpose." The courts of this State have repeatedly held that a county cannot issue bonds unless such power is expressly conferred by law. Such is the established doctrine in this State, and has been from an early time. It was affirmed in the original appeal of San Patricio County v. McClane, 44 Tex. 392, and reiterated in Robison v. Breedlove, 61 Tex. 316; also, in Lasater v. Lopez, 217 S.W. 376.

Prior to 1903 there was no provision in our statutes for the issuance of bonds and the courts held that counties had the implied authority to issue time warrants for the construction of permanent improvements. Straton v. Commissioners' Court of Kinney County, 137 S.W. 1170; Cowan, et al. v. Dupree, et al., 139 S.W. 887; Commissioners' Court of Floyd County, et al. v. Nichols, et al., 142 S.W. 37; Allen v. Abernathy, et al., 151 S.W. 348.

Sometime after these decisions, the Legislature authorized the issuance of bonds for courthouses, jails, public roads, etc.

Later, in the case of Lasater v. Lopez, 217 S.W. 373, the Supreme Court held that it was in the discretion of the Commissioners' Court whether they issue time warrants or bonds for the construction of these permanent improvements. In this opinion, Judge Phillips deals at length with the Constitution and legislative enactments which gave the commissioners' court authority to issue both warrants and bonds.

In the more recent case of Adams v. McGill, 146 S.W. (2d) 332, in which this department intervened, the court held that under a statute authorizing a county to provide for annual exhibition of horticultural and agricultural products but not expressly confirming the power to issue obligations to pay for improvements constructed for such purpose, the county had the implied power to issue time warrants payable over a period of years for improvements of a Livestock and Agricultural Building.

We quote from the opinion as follows:

" ***'A distinction is drawn between borrowing money and obtaining property or labor on credit, it being everywhere held that a municipal corporation has an implied power to use its credit for the accomplishment of any object for which it is authorized by law to expend money.'

"In the case of Bridgers v. City of Lampasas, Tex. Civ. App., 249 S. W. 1083, 1084, writ of error refused, this distinction is drawn with great clarity. The opinion is by that great jurist, Judge Key. In the opinion this proposition, taken from appellant's brief, was approved: 'It is generally conceded and well established that municipal corporations are invested by implication with the power to contract on the general credit of the city with respect to such improvements as they are authorized to make.' The section we have referred to above in Ruling Case Law was quoted from with

approval in the course of the opinion. The same section is cited in the case of Clark v. W. L. Pearson & Co., 121 Tex. 34, 39 S. W. 2d 27, 31, as sustaining the following proposition: 'The rule is well established that municipal corporations are invested at least with an implied or incidental power to contract on the general credit of the city with respect to such improvements as they are authorized by law to make.' Among the numerous cases cited by Judge Sharp in support of the proposition is the case of Lasater v. Lopez, 110 Tex. 179, 189, 217 S. W. 373.

"It is true that the foregoing two Texas cases we have cited and briefly discussed involve the power of cities. The case of Lasater v. Lopez, supra, cited by Judge Sharp, involves a county. But we see no valid reason why the reasoning does not apply to the action of a county acting within the orbit of its authority conferred by law. ***"

It is our understanding that the Robert B. Green Hospital is a county hospital and has been duly and legally established under the authority of Articles 4478-4493, Revised Civil Statutes.

In view of the foregoing, it is the opinion of this department that Bexar County subject to the express restrictions imposed by the Constitution and general laws has power to issue time warrants in payment for new construction and improvements on the existing facilities at the Robert B. Green Hospital and equipping same, provided that the applicable regulations relating to the issuance of such warrants be observed.

In this opinion we are not passing on the question of whether or not time warrants may be issued for the purpose of establishing and constructing a county hospital.

In reply to your last two questions, we have carefully examined the contract submitted and on its face it appears to be a legal and binding contract.

Bonds must be sold in accordance with the provisions of the authorizing law. City of Lubbock v. Geo. L. Simpson, 31 S. W. (2d) 665. Valid contracts for the sale and purchase of bonds may be enforced when the prescribed conditions have been complied with. Dallas Trust & Savings Bank v. Wortham Independent School District, 25 S.W.(2d) 174, 34 Tex.Jur., 672; Henrietta Independent School District v. Garrett & Company, 25 S.W.(2d) 317.

We have been unable to find any statutory requirements setting out the method for the sale of bonds other than Article 708, Vernon's Annotated Civil Statutes, which reads as follows:

"Bonds shall never be sold for less than their par value and accrued interest exclusive of commissions."

In the absence of specific statutory provision, it is our opinion that it is within the discretion of the Commissioners' Court as to when and what type contract they enter into in regard to the refunding of time warrants subject to the right of referendum as prescribed by law.

Trusting this answers your questions, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Claud O. Boothman
Claud O. Boothman, Assistant

APPROVED JAN 10, 1946
/s/ Carlos C. Ashley
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:       BWB, CHAIRMAN

COB:EP:wb