

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN 11, TEXAS**

WAGGONER CARR
ATTORNEY GENERAL

December 17, 1964

Honorable Bill Clayton, Chairman
House Interim Committee to Study
    Conservation of Soil and Water
    Resources
House of Representatives
Austin, Texas

Opinion No. C-363

Re: Whether the Legislature
may authorize the Water
Development Board to ex-
tend loans to political
subdivisions of the State
for conserving and devel-
oping underground water
or may guarantee bond is-
sues of political subdivi-
sions of the State issued
to provide funds for use
in developing and conserv-
ing underground waters.

Dear Mr. Clayton:

We quote your recent request for an opinion of this
office in toto.

"The House Interim Committee to Study
the Conservation of Soil and Water Resources
has been requested to consider proposing
legislation to extend the uses to which
money in the water development fund may
be put, under Section 49-c, Article III,
Constitution of the State of Texas. Several
proposals have been made to the committee;
among them are proposals to allow the Texas
Water Development Board to extend loans to
(or guarantee bond issues of) political sub-
divisions to

-1719-

"(1)    purchase water rights in under-
        ground water;

"(2)    drill water wells;

"(3)    provide transportation for the
        underground water from the well
        to a treatment and retail distri-
        bution point;

"(4)    treat the water from the under-
        ground supply and provide a re-
        tail distribution system for it;

"(5)    develop underground storage
        facilities for water.

"The committee would appreciate having
from you an opinion on whether or not it
would be constitutional for the legislature
to provide that money in the water develop-
ment fund may be used for any of those
purposes."

The constitutional provision authorizing the Texas
Water Development Fund and setting forth the purposes for
which it may be used is Article III, Section 49-c, Consti-
tution of Texas.  It provides in that part pertinent to
your question as follows:

"Such fund shall be used only for the
purpose of aiding or making funds avail-
able upon such terms and conditions as the
Legislature may prescribe, to the various
political subdivisions or bodies politic
and corporate of the State of Texas includ-
ing river authorities, conservation and
reclamation districts and districts created
or organized or authorized to be created or
organized under Article XVI, Section 59 or
Article III, Section 52, of this Constitu-
tion, interstate compact commissions to
which the State of Texas is a party and

municipal corporations, in the conservation
and development of the water resources of
this State, including the control, storing
and preservation of its storm and flood
waters and the waters of its rivers and
streams, for all useful and lawful purposes
by the acquisition, improvement, extension
or construction of dams, reservoirs and
other water storage projects, including any
system necessary for the transportation of
water from storage to points of treatment
and/or distribution, including facilities
for transporting water therefrom to whole-
sale purchasers, or for any one or more of
such purposes or methods."

Perhaps you ask these questions because, first, you
feel that since Article III, Section 49-c, fails to
specifically mention underground water that the water
development fund might not be used for the five purposes
enumerated above in your request, and perhaps you ques-
tion, second, whether Article III, Section 49-c, autho-
rizes the Legislature to extend the credit of the State
to political subdivisions of the State in view of Article
III, Section 50 of the Constitution of Texas.

We would first call your attention to the fact that
Article III, Section 49-c, does specifically authorize the
Legislature to appropriate or make the water development
fund available to districts organized under Article XVI,
Section 59 of the Constitution of Texas to be used in the
conservation and development of the water resources of
this State for useful and lawful purposes.  In this respect
Article III, Section 49-c, reads:

"Such fund shall be used only for the
purpose of aiding or making funds avail-
able . . . to . . . various political sub-
divisions or bodies politic and corporate
. . . and districts . . . created or organ-
ized or authorized to be created or organized
under Article XVI, Section 59 . . . of this
Constitution . . . in the conservation and

development of the water resources of this
State . . . for all useful and lawful pur-
poses . . . ."

Directing your attention to Article XVI, Section 59,
you will note that it reads in part:

"(a)  The conservation and development
of all the natural resources of this State,
. . . and the preservation and conservation
of all such natural resources of the State
are each and all hereby declared public
rights and duties; and the Legislature
shall pass all such laws as may be appro-
priate thereto.

"(b)  There may be created within the
State of Texas or the State may be divided
into, such number of conservation and re-
clamation districts as may be determined
to be essential to the accomplishment of
the purposes of this amendment to the
Constitution, which districts shall be
governmental agencies and bodies politic
and corporate . . . ."

Included among the types of districts that the Legis-
lature is authorized to organize under Article XVI, Section
59, are fresh water supply districts as provided for under
Article 7881, et seq., Vernon's Civil Statutes.  Articles
7881 et seq. clearly authorize the creation of such dis-
tricts for the purpose of conserving, transporting and
distributing fresh water from wells and reservoirs for
domestic and commercial purposes.  Articles 7881 et seq.
likewise authorize such districts to acquire by purchase
or otherwise underground water rights.  In this respect
Article 7881 reads in part:

"There may be created within this
State conservation districts to be known
as fresh water supply districts for the
purpose of conserving, transporting and
distributing fresh water from . . . reser-
voirs, wells, . . . for domestic and com-
mercial purposes as contemplated by Sec-
tion 59, Article XVI of the State Consti-
tution."

Article 7917, V.C.S., reads in part:

"All such districts shall have full
authority and right to acquire water rights
and privileges in any way that any indivi-
dual or corporation may acquire same, and to
hold the same either by gift, purchase, de-
vise, appropriation or otherwise. No enumer-
ation of specific powers herein shall be held
a limitation upon the general powers conferred
by this chapter, unless distinctly so expressed."

In the case of Ptacek v. Hofheinz, 128 S.W.2d 872 (Tex.
Civ.App. 1939, error ref.), it was held that fresh water
supply districts which utilize subterranean waters for their
source of supply might be organized under Article XVI,
Section 59 of the Texas Constitution.

Further, the resolution (H.J.R. No. 3, Acts 55th Leg.
R.S. 1957, p. 1636) authorizing the submission of Article
III, Section 49-c to a vote of the electorate reads in
part:

"Sec. 2. The foregoing amendment to the
Constitution shall be submitted to a vote of the
qualified electors of this State at an election
to be held on the 5th day of November, 1957,
same being the 1st Tuesday after the 1st Monday
in said November, 1957, at which election each
ballot shall have printed thereon, the following
words:

"'FOR the amendment to the Constitution of
Texas adding a new section to be known as Section
49-c of Article III, authorizing the issuance and
sale of Two Hundred Million Dollars ($200,000,000)
in bonds by the State of Texas to create the Texas
Water Development Fund to provide financial as-
sistance to certain political subdivisions or
bodies politic and corporate of the State of Texas
in the conservation and development of the water
resources of the State.

"'AGAINST the amendment to the Constitution
of Texas adding a new section to be known as
Section 49-c of Article III, authorizing the

issuance and sale of Two Hundred Million Dollars (200,000,000) in bonds by the State of Texas to create the Texas Water Development Fund to provide financial assistance to certain political subdivisions or bodies politic and corporate of the State of Texas in the conservation and development of the water resources of the State.'" (Emphasis Added)

The phrase "in the conservation and development of the water resources of the State" surely includes subterranean or underground water. It is said in 12 Tex.Jur.2d 369, Constitutional Law, Section 24:

". . .Although the intention of the framers is of some importance, the real question is what did the people intend by adopting a constitution framed in language submitted to them?"

In Smissen v. State, 71 Tex. 222, 9 S.W. 112 (1888) the court said on page 116 of 9 S.W.:

". . .The proceedings of a convention may be looked to in construing a clause of a constitution framed by it, when it is of doubtful construction; but such evidence is of but little weight, for the intention of the framers of a constitution is of but little importance, --the real question being, what did the people intend by adopting a constitution framed in language submitted to them?. . ." (Emphasis Added)

Certainly the electors of the State when they read the ballot for voting on the constitutional amendment in question would believe the funds for which they were voting might be used to develop underground waters. Most certainly the electorate of the State of Texas when it voted on the legislative resolution upon which Article III, Section 49-c was based, had a general knowledge of the types of districts formed under Article XVI, Section 59 of the Constitution, since that Article had been interpreted by both our judiciary when it decided the case of Ptacek v. Hofheinz and our Legislature when it passed Articles 7881, V.C.S. through 7959a. Certainly it was the intent of the electorate that water development funds might be used to aid fresh water supply districts which utilize subterranean waters for their source of supply. And certainly it was the intent of the electorate

of this State that when so authorized by the Legislature such fresh water supply districts could utilize the water development fund for the purposes for which they were legally created.

Since the electorate had certain knowledge that it was authorizing the fresh water supply districts to utilize (at legislative authorization) the water development fund for the purposes enumerated in Articles 7881 through 7959, we conclude that it intended such fund might be used for similar purposes by other enumerated political subdivisions of the State (upon legislative authorization) if not otherwise prohibited by the Constitution.

Therefore, we are of the opinion that Article III, Section 49-c authorizes the Legislature to provide that the water development board might extend loans of the water development fund to political subdivisions of the State which are not otherwise prohibited by the Constitution of Texas from engaging in such operations for the purposes of:

   (1)   purchasing water rights in underground water;

   (2)   drilling water wells;

   (3)   providing transportation for the underground water from the well to a treatment and retail distribution point;

   (4)   treating the water from the underground supply and providing a retail distribution system for it;

   (5)   developing underground storage facilities for water.

Article III, Section 50 of the Constitution of Texas prohibits the Legislature of the State of Texas from lending the credit of the State in aid of any municipal corporation in any manner whatsoever or in pledging the credit of the State in any manner whatsoever for the payment of liabilities present or prospective of any municipal corporation. We find no wording in Article III, Section 49-c of the Constitution which could be construed as a negation of Article III, Section 50 of the Constitution. It is quite evident from the wording of Article III, Section 49-c, that the electorate intended that there be created a maximum fund of $200,000,000.00 (Water Development Fund) which might be loaned to various political subdivisions for water development purposes but which should be paid back to the water development fund with <u>interest.</u>

Therefore, we are of the opinion that the Water Development Board cannot guarantee bond issues of political subdivisions for the purposes enumerated in your opinion request.

## S U M M A R Y

The Legislature may authorize the Water Development Board to extend loans to political subdivisions for conserving and developing underground water. The Legislature may not authorize the Water Development Board to guarantee bond issues of political subdivisions, the funds of which are to be used in developing and conserving underground waters.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By Milton Richardson
Milton Richardson
Assistant

MR:gm

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman

Linward Shivers
Wayne Rodgers
Arthur Sandlin
Roy Johnson

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone