COLLINGSWORTH COUNTY ET AL. V. JAMES V. ALLRED, ATTORNEY GENERAL.

No. 5912. Decided June 10, 1931.
(40 S. W., 2d Series, 13.)

*Walter C. Woodward,* of Coleman, *C. C. Small, Edward Brown,* both of Wellington, *John D. McCall,* of Dallas, and *Caldwell & Raymond,* of New York City, for relators.

The amendment to the Constitution in 1903 had the effect of increasing the power and not restricting the power of counties for the issuance of bonds. Harris Annotated Constitution of 1913, art. 3, sec. 52; Aransas County v. Coleman-Fulton Pasture Company, 191 S. W., 553 (Sup. Court).

Article 3, section 52, as adopted in 1876 was as follows: "The Legislature shall have no power to authorize any County, City, Town or other political corporation or sub-division of the State, to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

Until the amendment of 1903, all language in section 52, of article 3, was highly restrictive, being an explicit prohibition against the Legislature's granting any authority to subdivisions of the state to lend their credit for the purposes named.

The remaining language in section 52, as it now exists, was added by the constitutional amendment. The language of the amendment in part is as follows: "Provided, however, that under legislative provision any County, any political sub-division of a County, any number of adjoining Counties, or any political sub-division of the State, or any defined District, now or hereafter to be described and defined, within the State of Texas * * * in addition to all other debts, may issue bonds, or otherwise lend its credit in any amount, not to exceed one-fourth of the assessed valuation of real property of such District or territory * * * for the following purposes, to-wit: (Then naming the five purposes of navigation, levees, irrigation, drainage and permanent roads)."

In the case of Aransas County v. Coleman-Fulton Pasture Company, supra, the court clearly defines the purposes of the Constitutional Amendment of 1903. That decision is well considered in relator's brief in the Henderson county case, and will not be considered further at this time. However, in addition to the suggestions made by the court in that opinion, *we wish to emphasize the fact that all restrictive portions of section 52 were contained in the original constitutional provision, existing at all times prior to 1903 and that the language added in 1903 contained no restrictive provisions, but affirmatively stated that the indebtedness permitted under the amendment was "in addition to all other debts".*

Conceding for argument only that the provisions of the Constitutional Amendment of 1903 were substituted for constitutional provisions theretofore existing in reference to the issuance of bonds, certainly the power to issue *Court House Bonds* was not affected, because the amendment offers no alternative method for issuing court house bonds.

By no means do we concede that the amendment of 1903 was in substitution of any then existing power to issue bonds for any purpose. But, if it should be decided that by implication pre-existing powers were taken away from the Legislature when the 1903 amendment was adopted, it could only be argued that the powers taken away were those in reference to insurring debts for the five purposes covered by the amendment.

Can it be said that the people of Texas intended by the Constitutional Amendment to deprive the Legislature of its power to provide for the issuance of court house bonds merely because the people were granting to the Legislature power to provide for the issuance of bonds and the incurring of indebtedness for five other purposes in no wise pertaining to the erection of court houses?

*James V. Allred,* Attorney General, and *Scott F. Gaines,* Asst. Atty. Gen., for respondent.

All the proceedings necessary to the validity of said bonds have been taken by Collingsworth county, as provided by the laws of Texas, unless such proceedings are irregular and invalid for the reasons set forth in the case styled County of Shelby, Texas, et al., Appellants, v. The Provident Savings Bank & Trust Company, Appellee, in an opinion recently rendered on February 18, 1931, by the Honorable United States Circuit Court of Appeals for the Fifth Circuit, of which Texas is a part, under Docket No. 5980 (opinion of Justice Walker), a certified copy of which opinion is hereto attached and marked "Exhibit A", for the information of the court, in which said Circuit Court of Appeals holds in substance and in legal effect, that the amendatory portion of section 52 of article 3 of the Constitution of Texas, "negatives the conclusion that bonds of a county validly may be issued under legislative provision without a vote of two-thirds majority of the resident property taxpaying voters thereon who are qualified electors of the district or territory to be affected thereby, or for a purpose other than those enumerated in that provision"; that the questions involved in this decision of the court are still in litigation, a motion for rehearing having been filed and is now pending upon the docket of that court; that by reason of said decision and the general effect thereof, respondent has declined and refused to approve the transcript furnished by said Collingsworth county, Texas, and the bonds sought to be issued thereby, while this litigation is still pending and unsettled and on account of the effect of the decision as rendered.

*McBride, O'Donnell & Hamilton, W. P. Dumas* and *Caldwell & Raymond,* all of Dallas, as amici curiae, also filed suit.

MR. COMMISSIONER LEDDY delivered the opinion of the court.

Relators seek the issuance of a writ of mandamus to compel the attorney general of this state to approve $150,000 of bonds proposed to be issued by Collingsworth county for the purpose of building and constructing a courthouse.

Respondent concedes that the transcript of the record submitted for his approval, covering said issue of bonds, shows that the county has in all things substantially complied with the provisions of chapters 1 and 2 of title 22, Revised Civil Statutes of 1925, and that such record discloses all the facts essential to the validity of $150,000 of the bonds proposed to be issued. Respondent avers that his reason for refusing to approve said bonds was based solely on a decision rendered on February 18, 1931, by the Honorable United States Circuit Court of Appeals for the Fifth Circuit, in the case of Shelby County et al. v. Provident Bank & Savings Company. It is shown that it was held in said cause that the amendatory portion of section 52 of article 3 of the Constitution of Texas "negatives the conclusion that bonds of a county validly may be issued under legislative provisions without a vote of two-thirds majority of the

resident property tax payers voting thereon who are qualified electors of the district or territory to be affected thereby or for a purpose other than those which are enumerated in that provision."

Respondent also avers that the questions involved in said decision are still in litigation, and that a motion for rehearing was filed and pending upon the docket the court at the time the answer was filed herein. It may be said in passing that since the filing of respondent's answer a motion for rehearing has been granted in said cause pending in the Circuit Court, and the opinion theretofore rendered has been withdrawn. It does not appear, however, that any final disposition of the appeal in that case has been made by the Circuit Court of Appeals.

In view of the holding of the United States Circuit Court of Appeals, it was entirely proper for the attorney general, as a matter of precaution, to decline to approve said issue of bonds until an authoritative holding could be obtained from the court of last resort in this state.

Inasmuch as the record shows that Collingsworth county has fully complied with the provisions of the statutes with reference to the issuance of $150,000 of the bonds proposed to be issued for the purpose of building a courthouse, it is entitled to the writ of mandamus to compel the approval of such record by the attorney general; unless it be determined, as held by the Honorable Circuit Court of Appeals in its opinion, that the amendment to article 3, section 52 of our Constitution, negatives the conclusion that bonds of a county may be validly issued under legislative provision without a vote of two-thirds majority of the resident tax paying voters therein who are qualified electors of the district or territory to be affected thereby, or for a purpose other than those enumerated in that provision.

A proper determination of the issue thus raised necessitates the review of several provisions of our Constitution. Section 52 of article 3, originally adopted as a part of the Constitution of 1876, reads as follows: "The Legislature shall have no power to authorize any county, city, town, or other political corporation, or subdivision of the State, to lend its credit or to grant public money or thing of value, in aid of or to any individual, association, or corporation whatsoever, or to become a stockholder in such corporation, association, or company."

In 1904 this section was re-enacted with the addition thereto of the following:

"* * * Provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state or any defined district now or hereafter to be described and defined within the state of Texas, and which may or may not include towns, villages, or municipal corporations, upon a vote of two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be

affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to-wit:

"(a)   The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof or irrigation thereof, or in aid of such purposes.

"(b)   The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

"(c)   The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

Section 2 of article 2 of the Constitution, as adopted in 1876, is as follows: "The construction of jails, courthouses and bridges, and the establishment of county poor houses and farms, and the laying out, construction and repairing of County Roads shall be provided for by general laws."

The conclusion reached by the United States Circuit Court of Appeals in its original opinion is based upon the proposition that the provisions of the amendatory portion of section 52 of article 3 are exclusive and that the Legislature is therefore without power to authorize a county or any defined subdivision of the state to issue bonds except for the purposes and in the manner therein prescribed.

It is true in construing Constitutions that resort may be had to the well recognized rule of construction contained in the maxim: *"expressio unius est exclusio alterius."* Arnold v. Leonard, 114 Texas, 535, 273 S. W., 799; Parks v. West, 102 Texas, 11, 111 S. W., 726; American Indemnity Co. v. Austin, 112 Texas, 247, 246 S. W., 1010, 6 R. C. L., 49. But such rule of construction will not be given effect where the facts and circumstances surrounding the adoption of the amendment demonstrate that the people in adopting the same intended a different meaning to be given to their action. Aransas County v. Coleman-Fulton Pasture Co., 108 Texas, 216, 191 S. W., 553; Nunnemacher v. State, 129 Wis., 190, 108 N. W., 627, 9 L. R. A. (N. S.), 121, 9 Ann. Cas., 711.

The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. Aransas County v. Coleman-Fulton Pasture Co., 108 Texas, 216, 191 S. W., 553; Cox v. Robison, 105 Texas, 426, 150 S. W., 1149; Simmons v. Lightfoot, 105 Texas, 212, 146 S. W., 871.

The Constitution must be read as a whole and all amendments thereto must be considered as if every part had been adopted at the same time and as one instrument, and effect must be given to each part of each clause, explained and qualified by every other part. Gilbert v. Kobbe, 70 N. Y., 361. Different sections, amendments or provisions of a constitution which relate to the same subject matter should be construed together and considered in the light of each other. Dullom v. Willson, 52 Mich., 392, 19 N. W., 112, 51 Am. Rep., 128; State v. Astoria, 79 Or., 1, 154 Pac., 399.

If the provisions of article 3, section 52, are in irreconcilable conflict with other provisions of the Constitution, the section later in point of adoption will be given controlling effect. But this rule will only be applied upon a determination that it is impossible to harmonize the provisions by any reasonable construction which will permit them to stand together.

While the provisions of section 52 of article 3 prior to its amendment prohibited the Legislature from authorizing any county, or other political corporation or subdivision of the state from lending its credit, it did not operate to prevent the Legislature from authorizing a county to lend its credit by the issuance of its negotiable bonds for any of the purposes mentioned in section 2 of article 11 of the Constitution. The effect of section 52 of article 3, as construed by our courts, was merely to declare that, *except as otherwise provided in the Constitution,* the Legislature could not authorize the agencies named to lend their credit for any purpose. The provisions of section 2 of article 11, within a short time after its adoption, were held by our Supreme Court to authorize the Legislature to grant counties the power to issue bonds for any of the purposes mentioned in said section. Robertson v. Breedlove, 61 Texas, 316; Mitchell County v. The Bank, 91 Texas, 371, 43 S. W., 880.

The question then arises, was the power conferred by the amended portion of section 52, article 3, adopted in 1904, intended to be exclusive? If so, then the Legislature of this state cannot validly authorize the issuance of bonds by a county for any purpose whatever except those enumerated therein. Such holding would, in effect, declare that the adoption of the amendatory portion of section 52 was intended to and did operate to repeal the authority granted in section 2 of article 11, and also numerous other provisions of the Constitution under which our courts have held that the Legislature might authorize counties and other political subdivisions to issue bonds for various purposes.

An examination of the provisions of the amended portion of section 52 shows that it makes no reference to any other section of the Constitution, hence there is no expressed intention to repeal any such provisions. If it had been within the contemplation of the people in adopting said section to repeal numerous provisions of the Constitution under which elaborate

systems of laws had been enacted giving the people of counties and other political subdivisions of the state the privilege of issuing bonds for various purposes, certainly, some expressed intention to take away such rights should be found in the terms of the amendment itself. It is only by application of a rule of construction that it can be held a repeal of other provisions of the Constitution was intended by the adoption of the amendatory portion of section 52. Such construction is not a favored one. As said by Chief Justice Phillips in Lasater v. Lopez, 110 Texas, 179, 217 S. W., 373, 376: "The abrogation of an important public power of long existence and continued legislative sanction, whose lawful exercise will afford a public benefit, ought to rest upon surer ground than the mere construction of statutes. It ought to be found in clear legislative declaration. There is where we would ordinarily look for it, and there is where it should be expressed."

This rule thus aptly expressed by the Chief Justice applies with peculiar force when we have under consideration a repeal of several provisions of the Constitution, under each of which elaborate systems of laws for the issuance of bonds have been in force for more than a quarter of a century, and the people, during all of this time, have been continuously exercising the powers granted thereunder.

In our opinion, the evident purpose of the amendment to section 52 of article 3 was to enlarge the power of the Legislature rather than to restrict it. Under the provisions of section 52 as adopted in 1876, the Legislature was expressly prohibited from authorizing any political sub-division or defined district of the state to issue bonds for the purposes covered by the amendment. At that time there was no other provisions in the Constitution which authorized the Legislature to grant such power. In order that the power then possessed by counties might be broadened and political subdivisions of the state and defined districts might be clothed with powers not then possessed, it was essential that section 52 should be amended in the form in which it was adopted. That the purpose of such amendment was to confer broader and more liberal powers upon the Legislature in regard to authorizing the agencies named to issue bonds for the purposes specified, leaving unimpaired the vitality of other provisions of the Constitution, is declared by our Supreme Court in the case of Aransas County v. Coleman-Fulton Pasture Co., 108 Texas, 219, 191 S. W., 553, 555. In discussing the purpose of such amendment, chief Justice Phillips, speaking for the Court, said: "The amendment of 1903 to section 52 of article 3, which includes the subdivision quoted at the beginning of this opinion, was adopted at a later time than any of the provisions above referred to. Upon the general subject of road improvement, it marked a radical departure from the previous policy of the State. It was a response to a public demand that provision be made whereby the State, and every section of the State, might be supplied through voluntary taxation with

adequate, durable and permanent roadways. The former bounds of taxation for their construction and maintenance were set aside, and the politisal subdivisions named, in addition to all other debts, were under legislative provision, given authority upon a requisite vote to issue bonds in the liberal amount of one-fourth of the assessed valuation of the real property of such districts. Not only was such authority given to counties and subdivisions of a county, but any number of adjoining counties were empowered to form themselves into a taxing district as a means of securing the improvements in the territory comprised by them. Different units for the necessary taxation, and, therefore, different units as the beneficiaries of the taxation, from those theretofore existing, were thus authorized. It was plainly designed that the extent of the improvement should not be limited alone to the necessities of a county, nor was it to be longer dependent alone upon the powers of a county. The purpose of the amendment was a broad one, its scope was large, its spirit liberal."

If it be conceded that there is an apparent conflict between the provisions of the amendatory section and those of other provisions of the Constitution which granted the Legislature the power to authorize counties to issue bonds for various purposes, still it is our duty to reconcile such conflicts if the provisions of section 52 of article 3 are fairly susceptible of a construction which will accomplish such result. Certainly, it cannot be claimed that these provisions are not capable of an interpretation which will permit all provisions of the Constitution covering this subject matter to be given full force and effect. Section 52, article 3, may be reasonably and fairly construed as being adopted for the sole purpose of enabling political subdivisions and defined districts to be brought from under the ban existing by reason of the provisions of section 52 as it formerly existed and to enlarge the powers of counties to issue bonds without affecting in any manner the power of the Legislature to authorize counties to issue bonds under other provisions of the Constitution. No part of the Constitution should be given a construction which is repugnant to expressed authority contained in another part, if its language fairly admits of any other interpretation. Patterson v. Washington County, 136 Tenn., 60, 188 S. W., 613; Massey v. Glenn, 106 S. C., 53, 92 S. W., 321.

Contemporaneous legislative and executive interpretation of a constitutional provision is universally held to be entitled to weight. If the exercise of such power for a long period of time has been unchallenged, and the provision of the Constitution under which it has been exercised is of doubtful construction, then such interpretation will be given great weight by the courts.

For more than a quarter of a century after the adoption of the amendatory portion of section 52 the Legislature, various state officers, including governors, attorneys general, and the officers of counties through-

out the state have uniformly construed said amendment as not having the effect to take away any of the powers granted the Legislature by other provisions of the Constitution to provide for the issuance of bonds by counties for the purpose of building courthouses, jails, and the construction of public roads. The language of our Supreme Court, in G. H. & S. A. Ry. Co. v. State, 77 Texas, 367, 12 S. W., 988, 995, 13 S. W., 619, admirably fits the situation here presented. It was there said: ·

"But when, as in this case, seven successive Legislatures have through a period of thirteen years, acted upon a given construction of the Constitution; when the department entrusted with the immediate administration of the land system of the State had uniformly concurred in that construction; and when successive governors of the State, eminent for their patriotism and intelligence (more than one of them having first served with distinguished success in this court), have approved it—we feel that nothing less than an absolute conviction that they have all been wrong would justify us in so deciding.

"The duty to decide correctly was as incumbent on them as it can be on ourselves."                                                            .

The people of this state knew at the time the amendment to section 52 was adopted that another provision of the Constitution had been construed by our courts and the Legislature to authorize legislation permitting the issuance of bonds by counties for the purpose of building courthouses. They also knew that because of taxing limitations, it would be impossible for the Legislature to provide for building of courthouses and jailt by the various counties, as it was expressly commanded to do by the Constitution, without authorizing the creation of an indebtedness running over a long period of years. It is altogether probable that if they desired to take away the power then possessed by counties, leaving them completely without means to construct necessary courthouses and jails, language clearly evidencing such a purpose would have been embodied in the amendment. They would not have left its meaning so obscure that their purpose to repeal the elaborate and necessary provisions then existing for the issuance of bonds by counties for these purposes would only appear through veiled implication or by mere resort to technical rules of construction.                          .

Again, we find in the very language of the amendment itself evidence of an intention not to destroy, or in any way impair, the right of the Legislature to authorize the issuance of bonds under other provisions of the Constitution. In making provisions for the issuance of bonds by counties and political subdivisions for purposes stated in the amendment it is expressly declared that such districts may issue bonds "in addition to all other debts". Plainly, this was a recognition of the existing power of counties and political subdivisions to lawfully create debts and the per-

mission to issue bonds in addition to such debts necessarily presupposes the continued exercise of such right.

It is true that it was well within the power the people in adopting the amendatory portion of said article to deny the right of counties to issue bonds for the purposes granted in other provisions of the Constitution, even though to do so would bring about the most disastrous consequences. But, to give effect to a design which would lead to such result would require the support of a most direct and explicit declaration of such intention. McMullen v. Hodge, 5 Texas, 34; Clark v. Irwin, 5 Nevada, 111; Cooley's Constitutional Limitations (8th Ed.), p. 153.

We think upon a fair consideration of the language of the amendment, taking into account existing conditions, the effect and purpose of its adoption, and the absolute necessity of creating debts to build courthouses and jails, that it appears it was not within the contemplation of the people in adopting the amendment to section 52 to alter or repeal any provisions of the original Constitution. Such provisions, therefore, remain in full force, unimpaired by the adoption of this amendment. Ferrill v. Keel, 105 Ark., 380, 151 S. W., 269; In Re McCormick, 72 Ore., 608, 143 Pac., 915, 144 Pac., 425.

We conclude that a proper construction of the amendatory portion of section 52 of article 3 is that it was not intended to impair in any way the rights of counties to issue bonds under laws existing at the time of its adoption, but that its purpose was twofold: First, to authorize the Legislature to enlarge the existing powers of counties to issue bonds for the purposes specified therein, and, secondly, to authorize legislation conferring upon political subdivisions and defined districts of the state a power not then possessed of issuing bonds for all of the purposes specified, subject to the limitations therein imposed.

The writ of mandamus will issue as prayed for.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.