GRAHAM PURCELL V. JIM LINDSEY, CHAIRMAN, ET AL

No. A-6898. Decided June 14, 1958.
(314 S.W. 2d Series 283)

542

*John McKelvey*, of Electra, *Jones, Parish & Fillmore, Elmer H. Parish* and *Graham Purcell* (pro se), of Wichita Falls, for relator.

MR. JUSTICE NORVELL delivered the opinion of the Court.

Relator Graham Purcell has applied for a mandamus commanding the State Democratic Executive Committee (Jim D. Lindsey, et al) to cause his name "to be certified to the several chairmen of the county executive committees of the Democratic Party as a candidate for the Democratic nomination for the office of Judge of the Court of Criminal Appeals of the State of Texas before the 1958 Democratic Party Primary."

The Committee refused to certify Purcell's name because he was not licensed to practice law (according to the records of this Court) until August 19, 1949 and hence at the time of the general election to be held on November 4, 1958 he would not have been "a practicing lawyer, or a lawyer and judge of a court of record together (for) at least ten years."

The applicable constitutional provisions are as follows:

"The Court of Criminal Appeals shall consist of three judges, * * *. Said judges shall have the same qualifications and receive the same salaries as the Judges of the Supreme Court." (Art. 5, Sec. 4)

"No person shall be eligible to the office of Chief Justice or Associate Justice of the Supreme Court unless he be, at the time of his election, a citizen of the United States and of this state, and unless he shall have attained the age of thirty-five years, and shall have been a practicing lawyer, or a lawyer and judge of a court of record together at least ten years." (Art. 5, Sec. 2)

■ While the constitutional amendment creating the Court of Criminal Appeals and prescribing the qualifications of its members (Art. 5, Sec. 4) was adopted in 1891 and Article 5, Sec. 2

relating to the qualifications of Supreme Court members was amended in 1945 so as to require ten rather than seven years of legal experience, this circumstance does not affect the construction of the constitutional articles involved, for as stated by this Court in Collingsworth County v. Allred, 120 Texas 473, 40 S.W. 2d 13:

"The Constitution must be read as a whole, and *all amendments thereto must be considered as if every part had been adopted at the same time and as one instrument,* and effect must be given to each part of each clause, explained and qualified by every other part. Gilbert v. Kobbe, 70 N.Y. 361. Different sections, amendments, or provisions of a Constitution which relate to the same subject-matter should be construed together and considered in the light of each other. Dullam v. Willson, 53 Mich. 392, 19 N.W. 112, 51 Am. Rep. 128; State v. Astoria, 79 Or. 1, 154 P. 399." (Italics ours)

See also, State ex rel Wayland v. Vincent, Texas Civ. App., 217 S.W. 402, affirmed Vincent v. State ex rel Wayland, Texas Com. App., 235 S.W. 1084.

■ It therefore appears that relator is ineligible to hold the office which he seeks under the plain wording of the constitutional provisions quoted and hence would not be entitled to have his name placed upon the primary ballot in view of the positive proscription of the election code that: "No person ineligible to hold office shall ever have his name placed upon the ballot at any general or special election, or any primary election where candidates are selected under primary election laws of this State; and no such ineligible candidate shall ever be voted upon, nor have votes counted for him at any such general, special or primary election. * * *" Art. 1.05 Vernon's Ann. Texas Election Code.[1] Brown v. Darden, 121 Texas 495, 50 S.W. 2d 261; Burroughs v. Lyles, 142 Texas 704, 181 S.W. 2d 570; Cf. Rumler v. Reavley, 156 Texas 138, 293 S.W. 2d 638.

---

[1] Article 1.06 Vernon's Ann. Texas Election Code reads as follows:

"Neither the Secretary of State nor any county judge of this State, nor any other authority authorized to issue certificates, shall issue any certificate of election or appointment to any person elected or appointed to any office of this State, who is not eligible to hold such office under the Constitution of this State and under the above Section (art. 1.05); and the name of no ineligible person, under the Constitution and laws of this State shall be certified by any party, committee, or any authority authorized to have the names of candidates placed upon the primary ballots at any primary election in this State; and the name of no ineligible candidate under the Constitution and laws of the State shall be placed upon the ballot of any general or special election by any authority whose duty it is to place names of candidates upon official ballots."

But it is insisted by relator that in determining his eligibility we must look only to the qualifications prescribed by the amendment of 1891 and not to the later amendment of 1945.

Prior to 1876, appellate jurisdiction, both civil and criminal, was vested in the Supreme Court. However, the Constitution adopted in that year, created a Court of Appeals and vested it with appellate jurisdiction in criminal cases[2] The Constitutional qualifications for members of the Supreme Court and the Court of Appeals were as follows:

"No person shall be eligible to the office of chief justice or associate justice of the Supreme Court unless he be at the time of his election a citizen of the United States and of this State, and unless he shall have attained the age of thirty years, and shall have been a practicing lawyer or a judge of a court of this State, or such lawyer and judge together, at least seven years." Art. 5, Sec. 2, Constitution of 1876.

"They (judges of the Court of Appeals) shall be citizens of the United States and of this State; shall have arrived at the age of thirty years at the time of election; each shall have been a practicing lawyer, or a judge of a court of this State, or such lawyer and judge together, for at least seven years." Art. 5, Sec. 5, Constitution of 1876.

In 1891 the Constitution was amended so as to create the Courts of Civil Appeals and the Court of Criminal Appeals was established in place of the original Court of Appeals and vested with "appellate jurisdiction coextensive with the limits of the State in all criminal cases of whatever grade, with such exceptions or under such regulations as may be prescribed by law." (Art. 5, Sec. 5 Constitution of 1876.)

The wording of the constitutional provision (Art. 5, Sec 4) relating to the qualifications of judges of the Court of Criminal Appeals has not been amended since 1891. As indicated above, such judges "shall have the same qualifications and receive the same salaries as the judges of the Supreme Court."

Article 5, Sec. 2 of the 1876 Constitution was amended in minor particulars in 1891 and at the time of the creation of the

---

2 The outstanding feature of the Judiciary Article of the Constitution of 1876 was its creation of the Court of Appeals. That was the first appellate criminal court ever established. In this, Texas was the pioneer of all commonwealths." Hon. Nelson Phillips, 1 Texas Jur. xxxiii).

Court of Criminal Appeals the qualifications of the members of the Supreme Court were thus prescribed:

"No person shall be eligible to the office of Chief Justice or Associate Justice of the Supreme Court unless he be at the time of his election, a citizen of the United States and of this state, and unless he shall have attained the age of thirty years, and shall have been a practicing lawyer or a judge of a court, or such lawyer and judge together, at least seven years."

It is urged that as the Constitution in 1891 only required that a supreme court justice be "a practicing lawyer or a judge of a court, or such lawyer and judge together, for at least seven years," and that the wording of Article 5, Sec. 4 of the Constitution relating to the qualifications of a judge of the Court of Criminal Appeals has never been amended since 1891, the seven year rather than the ten year requirement is effective today.

If Article 5, Sec. 4 contained within itself a specification of the qualifications of a judge of the Court of Criminal Appeals, as did the article relating to the judges of the Court of Appeals, this argument would possess more force. However, the wording of the section is not that such judges shall have had seven years legal experience but that they "shall have the same qualifications and receive the same salaries as the judges of the Supreme Court." When we consider the method employed in stating the qualifications of the members of the Court of Appeals in 1876 and compare it with that employed in stating the qualifications of the members of the Court of Criminal Appeals in 1891, it seems that one of the dominant purposes of Article 5, Sec. 4 (1891) was to place judges of the Court of Criminal Appeals on a parity with justices of the Supreme Court insofar as qualifications and salaries were concerned. We think it also reasonable to conclude that this status of parity was intended to persist, absent a stated intention to the contrary. This would be in accordance with the scheme of two-coordinate courts of last resort, each being supreme within its particular field or jurisdiction.

■ It would appear that in 1945 when the people of Texas, acting in their sovereign capacity in fixing the fundamental law of the state by constitutional amendment decided that "no person shall be eligible to the office of Chief Justice or Associate Justice of the Supreme Court unless he * * * shall have been a practicin lawyer, or a lawyer and judge of a court of record together, at least ten years," and left unchanged the requirement of

Article 5, Sec. 4 that the judges of the Court of Criminal Appeals "shall have the same qualifications and receive the same salaries as the Judges of the Supreme Court," they prescribed in definite terms that from and after the effective date of the 1945 amendment, a judge of the Court of Criminal Appeals must "have been a practicing attorney, or a lawyer and judge of a court of record together (for) at least ten years" prior to the date of his election. Collingsworth County v. Allred, 120 Texas, 473, 40 S.W. 2d 13; Texas National Guard Armory Board v. McGraw, 132 Texas 613, 126 S.W. 2d 627; Farrar v. Board of Trustees of Employees Retirement System of Texas, 150 Texas 572, 243 S.W. 2d 688; Deason v. Orange County Water Control & Improvement District No. One, 151 Texas 29, 244 S.W. 2d 981.

The application for mandamus is denied. No motion for rehearing will be entertained. Rule 515, Texas Rules and Civil Procedure.

MR. JUSTICE GREENHILL not participating.

Opinion delivered June 14, 1958.