ACCEPTED
15-24-00120-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/10/2025 6:06 PM
CHRISTOPHER A. PRINE
CLERK



**KEN PAXTON**

ATTORNEY GENERAL OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
(512) 936-1700
6/10/2025 6:06:13 PM
CHRISTOPHER A. PRINE
Clerk

BENJAMIN MENDELSON
Assistant Solicitor General

Ben.Mendelson@oag.texas.gov

June 10, 2025

**Via efile**

Christopher A. Prine, Clerk
Texas Court of Appeals for the Fifteenth Judicial District

>    **Re:**   *State v. Harris County*, No. 15-24-00120-CV; and
>    *State v. Harris County*, No. 15-24-00061-CV

Dear Mr. Prine:

The State responds to Harris County's letter of June 2, 2025, which the County filed in both of the above-captioned and related appeals concerning the Texas Supreme Court's recent decision in *Paxton v. Annunciation House, Inc.*, No. 24-0573, 2025 WL 1536224 (Tex. May 30, 2025). That decision greatly undermines the County's lead argument regarding the Attorney General's authority to bring ultra vires suits and changes nothing about the merits of this case.

>    **I.**   ***Annunciation House* Proves That the Attorney General Has Common-Law Authority.**

In one of these related cases, Harris County has principally argued that the Attorney General has no common-law authority.[1] Br. for Appellees at 16, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—15th Dist. Jan. 14, 2025) (Community Prosperity County Br.). It has contended throughout this entire case that the Attorney General must have express constitutional or statutory authority to bring any cause of action and that his common-law powers do not exist. Community Prosperity County Br. 24. *Annunciation House* shatters that argument; the County knows it and thus desperately attempts to rewrite that decision. Even worse for the

---

[1] The County has raised this argument only in the case regarding the Community Prosperity Program, No. 15-24-00120-CV. The County now raises this argument in the Uplift Harris case, No. 15-24-00061-CV, for the first time in a post-submission letter.

County, *Annunciation House* shows that the statute adopting the common law both adopts common-law causes of action *and* authorizes the Attorney General to bring them. *Contra* Post-Submission Br. of Appellees at 4, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—15th Dist. Feb. 21, 2025) (County's Community Prosperity Post-Sub Br.). Thus, the Attorney General may bring ultra vires suits against local governmental entities, as he has done for years.

*Annunciation House* involved the Attorney General's authority to file quo warranto suits. There, the Texas Supreme Court traced the history of the quo warranto action from King Edward I through its adoption in the Texas Constitution. *Annunciation House*, 2025 WL 1536224, at *3-5. In doing so, the Court explained that "[i]n 1840, the Republic of Texas adopted 'the Common Law of England' as the 'rule of decision in this Republic' so far as it conformed to the recently adopted Constitution." *Id.* at *5 (quoting Act approved Jan. 20, 1840, 4th Cong., R.S., § 1, 1840 Repub. Tex. Laws 3, 4, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 177–78 (1898)). "In [that] adoption of the common law, we adopted the remedy of *quo warranto*, against corporations." *Id.* (first alteration in original). "*Given the attorney general's existing common-law authority, no statute directing the filing of quo warranto actions was necessary*, but the legislature nonetheless both recognized its existence and made bringing a quo warranto information mandatory in certain circumstances." *Id.* (emphasis added).

And while the People of Texas ultimately constitutionalized the Attorney General's quo warranto authority, that decision, per future Chief Justice Stayton, the County's preferred authority, *see* Ltr. 4, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—15th Dist. June 2, 2025), merely "authoriz[ed] a commonplace—rather than rarely exercised—power," *Annunciation House*, 2025 WL 1536224, at *5. The Court concluded that the quo warranto action "'was the common law of the land' in the early United States, and in Texas too, through our State's adoption of the common law and by virtue of statutory enactments." *Id.* at *7.

*Annunciation House* thus shows both (A) that the Attorney General has common-law powers that predate the Constitution and (B) that the statute adopting the common law includes both the adoption of common-law causes of action and the Attorney General's authority to bring them.

Page 3

## A. The Attorney General has common-law authority to bring this suit.

The Attorney General needs no statutory hook to bring this suit because his common-law authority suffices. Texas courts "follow an 'opt-out' approach that incorporates common-law principles absent the Legislature's clear repudiation." *Taylor v. Tolbert*, 644 S.W.3d 637, 650 (Tex. 2022). "This principle applies to all positive law—not just statutes, but constitutional texts, too." *Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 365 (Tex. 2023) (Young, J., concurring). Thus, the County's attempt to force this Court to adopt an "opt into" approach, requiring the Legislature to enact all parts of the common law, must fail. *See Taylor*, 644 S.W.3d at 650.

The County has once again contended that the Constitution abolished the Attorney General's authority to bring *all* common-law actions in district courts. Ltr. 3. But as the State has already explained, this Court is not writing on a blank slate. *Yett*, *Queen*, and, most importantly, *Hollins* show that the Attorney General may bring common-law causes of action, including ultra vires suits, notwithstanding the constitutional provisions that the County cites. *See* Post-Submission Br. of Appellant at 1-8, *State v. Harris County*, No. 15-24-00120-CV (Tex. App—15th Dist. Mar. 30, 2025) (State's Community Prosperity Post-Sub Br.). The County's attempts to explain how *Annunciation House* provides the clear statement necessary to repudiate the Attorney General's common-law authority are wrong and change nothing.

*First*, the County makes the unserious argument that in *Annunciation House*, the Court implicitly opined on the issue of the Attorney General's common-law authority in *this* case because it included a *see also* citation to support an entirely different proposition, which citation referenced a holding that the County takes out of context. Specifically, the Texas Supreme Court explained that the Attorney General has broad discretion in filing quo warranto actions and that that "grant of discretion sits comfortably with the principle found throughout our case law that 'as the chief legal officer of the [s]tate, [the attorney general] has broad discretionary power in conducting his legal duty and responsibility to represent the State,' power that may not lightly be seconded-guessed by coordinate branches of government." *Annunciation House*, 2025 WL 1536224, at *11 (second alteration in original) (quoting *Terrazas v. Ramirez*, 829 S.W.2d 712, 721-22 (Tex. 1991)). The Court cited several authorities for that proposition, including a *see also* citation to *Maud v. Terrell*, 200

S.W. 375, 376-77 (Tex. 1918). *Annunciation House*, 2025 WL 1536224, at *11. The County tries to cram into that citation a sub silentio holding that the power of county attorneys to represent the State in the district courts is exclusive. Ltr. 3-4. But *Annunciation House* cited *Maud* for the proposition that the Attorney General *has broad authority to represent the State*, and as the State has previously explained, State's Community Prosperity Post-Sub Br. 4, *Maud* held that the powers of the Attorney General and county attorneys to represent the State are "exclusive" in the sense that the Legislature may not confer their powers to represent the State to others. Specifically, *Maud* concerned a constitutional challenge to a statute that permitted the Comptroller to contract with private individuals to collect inheritance taxes. 200 S.W. at 375. The challengers asserted that the statute unconstitutionally gave private persons, not the county attorney or the Attorney General, the power to prosecute suits for the collection of those taxes. *Id.* at 376. In that context, the Supreme Court held that the powers of county attorneys and the Attorney General are "exclusive" and that the "Legislature cannot devolve them upon others." *Id.* That holding is irrelevant to this case, and the County has offered no response to that point from the State's post-submission brief. The County's attempt to read a secret holding into a *see also* citation shows desperation.

*Second*, the County points to an irrelevant part of *Annunciation House* where the Texas Supreme Court reaffirmed the old proposition that the Attorney General's quo warranto authority is exclusive. 2025 WL 1536224, at *11. That breaks no new ground—indeed, the Supreme Court decided that as early as 1896. *See id.* (citing *State v. Int'l & G.N. Ry. Co.*, 35 S.W. 1067, 1068-69 (Tex. 1896)). Nor does the Court's citation to a 100-year-old case explaining the *expressio unius* canon secretly imply that the Attorney General has no common-law powers when *Annunciation House* spends page after page expressly holding that he does. *Id.* at *5 ("Given the attorney general's existing common-law authority, no statute directing the filing of quo warranto actions was necessary."). *Contra* Ltr. 4. In 1896, *International and Great Northern Railroad* explained that "in selecting the depositories of a given power," the Constitution "intended that the depository should exercise an exclusive power," unless it expressed otherwise. 35 S.W. at 1068; *see* Ltr. 4 (pointing to this proposition). But the Supreme Court has since clarified that the "doctrine of *expressio unius est exclusio alterius* is simply an aid to determine legislative intent, not an absolute rule. As a rule of reason and logic, it should not be mechanically applied to compel an unreasonable interpretation." *Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999) (footnotes omitted). That principle is particularly

relevant in the context of the Attorney General's common-law powers, which, as the Supreme Court has repeatedly explained since 1896, allow the Attorney General to bring common-law actions in district courts. *See Yett v. Cook*, 281 S.W. 837, 843 (Tex. 1926) (explaining that under "the ancient and modern rules of the common law" the Attorney General may bring common-law causes of action); *State v. Hollins*, 620 S.W.3d 400, 405 (Tex. 2020) (holding, in a suit by the Attorney General against Harris County officials, that the "rule is an elementary one that the [S]tate may maintain an action to prevent abuse of power by public officers").

At bottom, *Annunciation House* shows that the Attorney General may bring common-law actions in district courts, and nothing in that case shows that anything has clearly repudiated those powers. But even if such implications existed, the County may not properly ask this Court to read that case in conflict with *Yett* and *Hollins*. As the State has already explained (and the County ignores), a lower court must harmonize the authority of higher courts, not manufacture conflict. State's Community Prosperity Post-Sub Br. 5. Further, if a Supreme Court case directly applies in a case, yet appears to rest on reasons that other cases rejected, the lower court must follow the case that directly controls. *Id.* Here, those cases are *Yett* and *Hollins*. But, as the State has explained, *Annunciation House* supports those cases and does not undermine them.

## B. The Attorney General has statutory authority to bring this suit.

*Annunciation House* refutes the County's argument that the statute adopting the common law does not apply here. *See* County's Community Prosperity Post-Sub Br. 4-5. That statute explains that the "rule of decision in this state consists of those portions of the common law of England that are not inconsistent with the constitution or the laws of this state." Tex. Civ. Prac. & Rem. Code § 5.001(a). The County previously argued that the term "rule of decision" merely references the existence of common-law causes of action, including the ultra vires suit, but says nothing about who may bring them. County's Community Prosperity Post-Sub Br. 4.

*Annunciation House* squarely held otherwise. In discussing the history of the Attorney General's quo warranto powers, it explained that the "doctrine was part of Texas law from the beginning. In 1840, the Republic of Texas adopted 'the Common Law of England' as the 'rule of decision in this Republic' so far as it conformed to the recently adopted Constitution." *Annunciation House*, 2025 WL 1536224, at *5

(citing the original version of Texas Civil Practice & Remedies Code § 5.001(a), Act approved Jan. 20, 1840, *supra*). "In [that] adoption of the common law, we adopted the remedy of *quo warranto*, against corporations." *Id.* "Given the attorney general's existing common-law authority, no statute directing the filing of quo warranto was necessary, but the legislature nonetheless both recognized its existence and made bringing a quo warranto information mandatory in certain circumstances." *Id.* Although the People of Texas later constitutionalized the Attorney General's quo warranto power, *id.*, that action simply "elevate[d] to a constitutional level" the Attorney General's preexisting common-law quo warranto powers, including the power to "file legal actions addressing . . . misuse," *id.* at *7. In other words, the statute adopting the common law not only adopts common-law causes of action—it also incorporates the Attorney General's preexisting authority to file those causes of action in district courts. The County's contrary interpretation of that statute is wrong.

Perhaps realizing this problem, the County suggests in a footnote that the Attorney General must show that, in 1840, courts of different States adopted a common-law right of attorneys general to file ultra vires suits on behalf of the State. Ltr. 3 n.2. But that argument again improperly asks this Court to write on a blank slate. Texas courts have already held that the Attorney General has such common-law powers, both long ago and today. *See Yett*, 281 S.W. at 843; *Hollins*, 620 S.W.3d at 410; *Queen Ins. Co. v. State*, 22 S.W. 1048, 1052 (Tex. Civ. App. 1893) ("[W]here the public are injured the state must sue to redress the wrong by her attorney general, whether there be a statute to that effect or not."), *rev'd on other grounds*, 24 S.W. 397 (Tex. 1893).

## II. *Annunciation House* Does Not Alter the Gift Clause Analysis.

As to the merits, the County re-ups its argument from earlier briefing that, before the 1876 Constitution, "relief to the poor was understood as a government function serving a public purpose, not as a private gift." Ltr. 2. As an initial matter, the County's argument here states nothing new. No one in this litigation has ever contended that a court may not "review[] English, early American, and Texan . . . practices" in determining what the Gift Clauses cover. *Contra* Ltr. 1. Indeed, the State has also "reviewed" such "practices" in both this case and its companion case. *See, e.g.*, Br. for Appellant 4-9, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—15th Dist. Jan. 7, 2025) (Community Prosperity State's Br.); Br. for

Appellant at 2-7, *State v. Harris County*, No. 15-24-00061-CV (Tex. App.—15th Dist. May 29, 2024) (Uplift Harris State's Br.). Nor has anyone argued that legislation contemporaneous (or nearly so) to a constitutional provision has no bearing on the meaning of constitutional text. Indeed, Texas courts commonly conduct these kinds of historical analyses as a matter of course. *See, e.g.*, *Am. Indem. Co. v. City of Austin*, 246 S.W. 1019, 1023 (Tex. 1922) ("Legislative construction and contemporaneous exposition of a constitutional provision is of substantial value in constitutional interpretation."). *Annunciation House* therefore offers nothing new, and Harris County's argument merely restates contentions the County has already made. That is inappropriate at this stage.

But the County's argument fails in any event. As an initial matter, and as the State has already explained, the Texas Constitution forecloses the County's programs. Assuming that the County's interpretation of pre-1876 practice is correct, the state constitution can displace the common law if it contains clear language to that effect. Here, it does. Article III, section 51 bars "payment of State money to private persons other than those contemplated by" the Constitution's "several amendments" to that general rule. Tex. Att'y Gen. Op. No. GM-2578, at 3 (1940); *see* Tex. Const. art. III, § 51. The Constitution contains a welfare exception, which allows the Legislature to provide "for assistance grants to [the] needy," Tex. Const. art. III, § 51-a, but limits the categories of "needy" to which the government may provide relief, *see* Community Prosperity State's Br. 38, 46-49; Uplift Harris State's Br. 29-31. Specifically, government may provide relief to "dependent children and the[ir] caretakers," those "totally and permanently disabled because of a mental or physical handicap," the "aged," and the "blind." Tex. Const. art. III, § 51-a(a). The Texas Constitution also says that the Legislature may provide "for the medical care, rehabilitation[,] and other similar services for needy persons" but limits the amount that may be "paid out" for such "grants." *Id.* art. III, § 51-a(b). Both Uplift Harris and the Community Prosperity Program transgress those limits. Community Prosperity State's Br. 46-48; Uplift Harris State's Br. 29-31.

Likewise, the County relies (at 2) on three constitutional provisions to support its notion that it may provide aid to the poor. But two of those provisions have been either amended, *see* Tex. Const. of 1876 art. XI, § 2, or repealed, *see id.* art. VI, § 1 (repealed Nov. 4, 1997). The third has been redesignated, *compare id.* art. XVI, § 8, *with* Tex. Const. art. IX, § 14, but the County does not rely on the new provision, *see* Ltr. 2—probably because it doesn't allow the County to do what it wants to do here,

*see* Tex. Const. art. IX, § 14 (providing only for county poor houses and farms); Community Prosperity State's Br. 6-7 (discussing county poor houses and farms); Uplift Harris State's Br. 3-4 (same).

Perhaps the County ignores the fact that the Constitution expressly precludes the payments the County wishes to make, *see* Ltr. 1-2, due to the County's consistent argument that later constitutional amendments don't count in determining the Gift Clauses' meaning today, *see, e.g.*, Br. for Appellees at 56-57, *State v. Harris County*, No. 15-24-00061-CV (Tex. App.—15th Dist. July 8, 2024). But that's wrong. "The Constitution must be read as a whole, and all amendments thereto must be considered as if every part had been adopted at the same time and as one instrument." *Collingsworth County v. Allred*, 40 S.W.2d 13, 15 (Tex. 1931) (orig. proceeding). In particular, "[d]ifferent sections, amendments, [and] provisions of a Constitution which relate to the same subject[]matter," as the Gift Clauses and their amendments do, "should be construed together and considered in the light of each other." *Id.* The County can't pretend that later amendments don't exist. *See id.* And as the State has explained, *e.g.*, Uplift Harris State's Br. 30, reading an all-purpose welfare exception into the state constitution would render the Gift Clause amendments (as well as the Gift Clauses themselves, *e.g.*, Tex. Const. art. III, § 51) entirely superfluous.

The County also ignores history. The State has already explained why the County's programs do not serve a *predominantly* public purpose. Community Prosperity State's Br. 36-40; Uplift Harris State's Br. 21-22. But even if historical, pre-1876 practice recognized "relief to the poor . . . as a government function," Ltr. 2, that practice also required controls on that relief to prevent abuse of the public treasury, Community Prosperity State's Br. 4-6; Uplift Harris State's Br. 4. For example, as the State has described, "when counties did provide money to those in need, they maintained some level of control and oversight. In at least one case, 'the recipient of the funds was required to present his accounts, justifying the expenses of care, to the [commissioners] court.'" Community Prosperity State's Br. 6 (quoting Martha Doty Freeman, *Indigent Care in Texas: A Study of Poor Farms and Outdoor Relief*, Index of Tex. Archaeology 18, 54 (2008)); Uplift Harris State's Br. 4. And some counties stipulated that recipients of stipends could deploy the money only for certain uses. Community Prosperity State's Br. 6; Uplift Harris State's Br. 4.

Thus, per the County's own argument (at 2), if the Gift Clauses incorporated the common law, they inherently include a controls requirement. The Texas Supreme Court has interpreted them accordingly. *E.g.*, *Borgelt v. Austin Firefighters Ass'n, IAFF Loc. 975*, 692 S.W.3d 287, 301 (Tex. 2024). And, by the County's reasoning, when the Legislature authorized county commissioners' courts to "provide for the support of paupers," Act approved July 22, 1876, 15th Leg., R.S., ch. 55, § 4, 1876 Tex. Gen. Laws 51, 51-52, that statute necessarily incorporated the controls requirement, too. This means that the common law, the Constitution, and statutes require controls.

The County's letter nowhere addresses this, which makes sense: Throughout this and the companion litigation, the County has always struggled with controls. After all, Uplift Harris constitutes a "no-strings-attached" program that lacks controls altogether; the Texas Supreme Court has already explained why this program flunks the constitutional (and statutory) controls requirement. *In re State*, No. 24-0325, 2024 WL 2983176, at *3-4 (Tex. June 14, 2024). And in its letter, the County does nothing to refute the State's arguments regarding the lack of controls in the Community Prosperity Program. *See* Community Prosperity State's Br. 40-45. That is fatal. *See, e.g.*, *Borgelt*, 692 S.W.3d at 301 (noting that the Gift Clause test is conjunctive, so governments must meet, among other things, both the predominant-public-purpose *and* controls requirements).

Respectfully submitted.

/s/Benjamin Wallace Mendelson

Benjamin Wallace Mendelson
Assistant Solicitor General

cc: all registered counsel (via efile)

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Toni Shah on behalf of Ben Mendelson
Bar No. 24106297
toni.shah@oag.texas.gov
Envelope ID: 101862731
Filing Code Description: Letter
Filing Description: 152400120CV Uplift Harris 2 second post submission response
Status as of 6/11/2025 7:19 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Delonda Dean | | ddean@yettercoleman.com | 6/10/2025 6:06:13 PM | SENT |
| Yetter Coleman | | efile@yettercoleman.com | 6/10/2025 6:06:13 PM | SENT |
| Edward Swidriski | 24083929 | Edward.Swidriski@harriscountytx.gov | 6/10/2025 6:06:13 PM | SENT |
| Toni Shah | | toni.shah@oag.texas.gov | 6/10/2025 6:06:13 PM | SENT |
| Athena Leyton | | athena.leyton@oag.texas.gov | 6/10/2025 6:06:13 PM | SENT |
| Grant Martinez | | gmartinez@yettercoleman.com | 6/10/2025 6:06:13 PM | SENT |
| Lily Hann | | lhann@yettercoleman.com | 6/10/2025 6:06:13 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 6/10/2025 6:06:13 PM | SENT |

Associated Case Party: Harris County, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 6/10/2025 6:06:13 PM | SENT |
| Jonathan Fombonne | 24102702 | jonathan.fombonne@harriscountytx.gov | 6/10/2025 6:06:13 PM | SENT |
| Eleanor Matheson | 24131490 | Eleanor.matheson@harriscountytx.gov | 6/10/2025 6:06:13 PM | SENT |
| Christian Menefee | 24088049 | christian.menefee@harriscountytx.gov | 6/10/2025 6:06:13 PM | SENT |
| Ryan Cooper | 24123649 | Ryan.Cooper@harriscountytx.gov | 6/10/2025 6:06:13 PM | SENT |
| Andrea Mintzer | | Andrea.Mintzer@harriscountytx.gov | 6/10/2025 6:06:13 PM | SENT |

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 6/10/2025 6:06:13 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Toni Shah on behalf of Ben Mendelson
Bar No. 24106297
toni.shah@oag.texas.gov
Envelope ID: 101862731
Filing Code Description: Letter
Filing Description: 152400120CV Uplift Harris 2 second post submission response
Status as of 6/11/2025 7:19 AM CST

Associated Case Party: The State of Texas

| Nicole A.Myette | | nicole.myette@oag.texas.gov | 6/10/2025 6:06:13 PM | SENT |
|---|---|---|---|---|
| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 6/10/2025 6:06:13 PM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 6/10/2025 6:06:13 PM | SENT |